Belknap
No. 92-282

THE STATE OF NEW HAMPSHIRE

v.

JEFFRY R. HANNAN

September 22, 1993

*Jeffrey R. Howard*, attorney general (*John A. Stephen*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J.   The defendant, Jeffry R. Hannan, was convicted following a jury trial in Superior Court (*Dickson*, J.) of several counts of burglary and theft. On appeal, he challenges the propriety of an *ex parte* discussion between the trial court and a juror. We affirm.

The defendant was indicted and tried for burglary and theft in connection with the theft of copper pipe from several businesses in Laconia. During the second day of trial, the trial court held an *ex parte* discussion on the record with a juror concerning that juror's prior contact with a witness, David Erving. Erving worked for one of the Laconia businesses that had been burglarized, and he testified that his business had not authorized anyone to enter the premises to remove copper pipe. During the *ex parte* discussion, the juror explained that she was a customer service representative at a bank where Erving, whom she knew as a realtor, was a "frequent customer." The juror said that "maybe once a month" she assisted Erving when he came to the bank to open accounts and conduct other business. The juror said she did not believe her prior contact with Erving created a "conflict," and when asked if she might place more weight on Erving's testimony than that of other witnesses, she answered: "I don't think so, because he's not—he doesn't know the defendant personally. Or he—you know, I don't think he's one of the key witnesses." The juror also said that because Erving had not "personally suffered any loss" as a result of the theft, she did not feel

any special sympathy for him. Finally, the juror said that she "[did not] have a problem" remaining on the jury, and assured the trial court that she would not mention her prior association with Erving to the other jurors.

Although the *ex parte* discussion was recorded, it was not brought to the attention of counsel for either party. The defendant did not learn of the discussion until after his conviction, when his trial counsel received a copy of the trial transcript. On appeal, the defendant contends that the trial court's failure to notify him of the *ex parte* discussion violated his right under the New Hampshire and United States Constitutions to be present at all stages of trial. We address the defendant's State constitutional claim first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only to aid our analysis. *See State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985).

The defendant's right under the State Constitution to be present at trial derives from the specific guarantees set forth in part I, article 15 "to produce all favorable proofs, confront witnesses, and be fully heard in one's defense, as well as the right to due process." *State v. Castle*, 128 N.H. 649, 651, 517 A.2d 848, 849 (1986) (citations omitted). Except in first degree and capital murder cases, it is the customary practice in New Hampshire for the trial court to hold discussions with individual jurors, on the record, outside the hearing of counsel, and then communicate the substance of the discussion to counsel. *See State v. Bailey*, 127 N.H. 416, 421, 503 A.2d 762, 767 (1985). This practice passes constitutional muster so long as a record of the discussion is preserved and made available to the defendant. *See State v. Brodowski*, 135 N.H. 197, 201, 600 A.2d 925, 927 (1991). A record of the *ex parte* discussion serves two distinct functions. First, it grants the defendant an opportunity to be heard and protects his right to trial by an impartial jury by enabling him to respond to issues raised during discussions conducted outside the presence of trial counsel. *See Castle*, 128 N.H. at 652, 517 A.2d at 850. Second, the record "permits appellate review of the [discussion] if the defendant later challenges the trial court's decision not to excuse a juror." *Id*. A trial court's failure to preserve a record of the discussion constitutes an error that requires reversal unless it "appears beyond a reasonable doubt that the error was harmless." *Bailey*, 127 N.H. at 421, 503 A.2d at 767.

In this case, the trial court's failure to notify the defendant of the *ex parte* discussion was an error of the same magnitude as a

failure to record the discussion in the first instance. In either case, a defendant is "deprived of access to the information needed to effectively exercise his right to challenge [the] juror." *Castle*, 128 N.H. at 652, 517 A.2d at 850. Accordingly, the trial court's error will require reversal unless it appears beyond a reasonable doubt that the error was harmless.

The defendant contends that because he was not permitted to either propose questions for the juror or register arguments for her disqualification, the record cannot support a harmless error analysis. The defendant, however, relies on an erroneous assumption as to the scope of the record that forms the basis of the harmless error analysis. Where a trial court has erred by failing to provide a record of an *ex parte* discussion, we have applied the harmless error test to determine if such an error requires reversal. *See Brodowski*, 135 N.H. at 201–02, 600 A.2d at 927–28; *Castle*, 128 N.H. at 653–54, 517 A.2d at 851; *Bailey*, 127 N.H. at 421–22, 503 A.2d at 767. In doing so, we have out of necessity looked beyond the discussion itself and considered the entire jury selection process. Thus, in *Bailey*, where the trial court failed to record a discussion with the venire panelists, we based the harmless error analysis on the trial court's performance during jury selection. *Bailey*, 127 N.H. at 422, 503 A.2d at 767. Because the court had demonstrated a willingness to disqualify potential jurors for cause, we found it "highly unlikely that the [court] would have allowed an unqualified juror to be retained." *Id.* We noted that "there was only a very remote chance that a record of the [discussions] would have revealed any indication of disqualification." *Id.; cf. Brodowski*, 135 N.H. at 202, 600 A.2d at 928 (failure to record *ex parte* discussion was not harmless error where record of jury selection process "neither sufficiently support[ed] nor negate[d] an inference that the court became progressively reluctant to excuse jurors"); *Castle*, 128 N.H. at 653, 517 A.2d at 850–51 (failure to record *ex parte* discussion found not harmless error). We see no rationale for not applying the same method of review in cases where a trial court commits the functionally equivalent error of failing to notify counsel of a recorded *ex parte* discussion. Of course, the existence of the record of the discussion in this case facilitates our review by allowing us to determine precisely what questions were asked of the juror, and to evaluate "any indication of disqualification," *Bailey*, 127 N.H. at 422, 503 A.2d at 767, that may have evaded the trial judge.

■ Applying the harmless error analysis to the present case, we find beyond a reasonable doubt that the trial court's failure to notify counsel of the *ex parte* discussion did not affect the verdict. The trial

court elicited sufficient information from the juror to measure the extent of her prior contact with Erving. The court concluded that disqualification was not warranted only after the juror said that she would not put undue emphasis on Erving's testimony, that she did not sympathize with Erving, whom she did not perceive as a key witness, and that she would not discuss the matter with the other jurors. Moreover, we fail to perceive how the defendant could have been prejudiced by the juror's association with Erving. Erving did not implicate the defendant in the burglaries or thefts, and his testimony established only that his business had not authorized the removal of copper pipe. This testimony did not conflict with the defense put forth by the defendant, who did not dispute that the thefts had occurred, but contended that they were committed by someone other than himself. We conclude that the defendant's inability to participate in the *ex parte* discussion or to argue for the juror's dismissal did not affect the outcome of this case.

The defendant also argues that the *ex parte* discussion violated his rights under the sixth and fourteenth amendments to the Federal Constitution. According to the defendant, the trial court committed a constitutional error that, under federal law, is not amenable to harmless error analysis.

■ The Supreme Court has distinguished between "'structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error standards,' and . . . trial errors which occur 'during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented.'" *Sullivan v. Louisiana*, 113 S. Ct. 2078, 2082–83 (1993) (quoting *Arizona v. Fulminante*, 111 S. Ct. 1246, 1252, 1254 (1991)). A trial court's failure to record an *ex parte* communication with a juror, or to inform counsel that such a communication occurred, has been categorized as a trial error reviewable under the harmless error test. *See, e.g., Rushen v. Spain*, 464 U.S. 114, 117–19 (1983). In explaining its treatment of these errors, the Supreme Court has noted that "[t]here is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge." *Id.* at 118. Preventing appellate courts from applying the harmless error test to errors incident to *ex parte* communications would "ignore[ ] [the] day-to-day realities of courtroom life and undermine[ ] society's interest in the administration of criminal justice." *Id.* at 119.

■■ The analysis to determine the effect of a federal constitutional error is the same as that applied to violations of the State

Constitution: the error will require reversal unless it is shown "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). In the case of an unrecorded *ex parte* communication between the trial court and a juror, evidence that the communication concerned only "innocuous" matters, and that the defendant was not prejudiced by the juror's presence on the jury, lends support to a finding of harmless error. *See Rushen*, 464 U.S. at 120–21. In the present case, we have already noted the benign nature of the *ex parte* discussion. The defendant was not prejudiced by the discussion, or by the trial court's decision not to disqualify the juror. Accordingly, we find beyond a reasonable doubt that the trial court's failure to notify the defendant of the discussion did not affect the verdict, and does not require reversal.

*Affirmed.*

All concurred.