NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0362n.06
Filed: May 29, 2007

No. 05-5707

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| EDWARD MELTON, | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) |

BEFORE:   KEITH, COLE, Circuit Judges; and OLIVER, District Judge.[*]

**DAMON J. KEITH, Circuit Judge.**   Defendant, Edward Melton, pled guilty to aiding and abetting a carjacking, in violation of 18 U.S.C. §§ 2119 and 2.  Proceeding *pro se*,[1] he now appeals his sentence.   For the reasons that follow, we **AFFIRM**.

**I**

As Lee Ann Williams drove home on July 15, 2004, Melton and his co-defendant, Unjolee Moore, took an interest (albeit a devious one) in her car — a 2005 Mercedes Benz SL500 Roadster. They figured that they would follow her and take it.  So when Williams arrived home later that day,

_____

[*] The Honorable Solomon Oliver, Jr., United States District Court Judge for the Northern District of Ohio, sitting by designation.

[1] Melton's attorney filed an "*Anders* brief," seeking to withdraw from representing Melton as permitted in *Anders v. California*, 386 U.S. 738 (1967).  After examining a few run-of-the-mill issues in sentencing appeals, the *Anders* brief concludes that there are no viable issues for this appeal, and that any appeal would thus be frivolous.

Moore jerked her from the Mercedes, took the driver's seat, and fled the scene. Melton waited nearby as Moore completed the robbery and followed as he fled.

Minutes later, Chattanooga police officers spotted the stolen Mercedes and attempted to stop it. Moore refused, resulting in a pursuit that ended with the Mercedes crashed into a tree. Moore was arrested, but Melton escaped unnoticed. Once the Mercedes was returned to Williams, she found a can of pepper spray in it. Moore claimed ownership to the spray, and told officers he had planned to use it had Williams resisted his demands.

Moore also gave up Melton as his accomplice, who was arrested the next day. Not only did Melton confess to his participation in the carjacking, he admitted he knew of Moore's plan to use the pepper spray in the event Williams had resisted the robbery. Hence, both were charged with aiding and abetting each other in the carjacking (a violation of 18 U.S.C. §§ 2119 and 2); and both pled guilty.

The United States Sentencing Guidelines recommended a sentence in the range of 51 to 63 months for Melton, based in part on a 3-level enhancement that the sentencing court imposed after determining pepper spray to be a "dangerous weapon." *See* U.S.S.G. § 2B3.1(b)(2)(E). After considering the advisory range (and hearing no objections from Melton), the court sentenced Melton to 55 months of incarceration. (Moore was sentenced to 75 months.)

Proceeding *pro se*, Melton appeals. He primarily argues that the sentencing court improperly applied the 3-level enhancement when it determined pepper spray to be a "dangerous weapon."[2] *See id.*

## II

Because Melton failed to make any objections in the lower court, the appellate standard of review is "plain error." *See United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994). Under "plain error" review, Melton must show that

> (1) an error occurred in the district court, (2) that was plain, (3) which affected substantial rights, (4) and seriously interfered with the fairness, integrity, or public reputation of the judicial proceedings.

*United States v. Treadway*, 328 F.3d 878, 883 (6th Cir. 2003). Hence, we must first decide whether the district court committed error in applying the § 2B3.1(b)(2)(E) enhancement.

That section directs that "if a dangerous weapon was brandished or possessed" in the commission of a robbery, a sentencing court must apply a 3-level enhancement to the defendant's base offense level. Melton, of course, did not personally possess the pepper spray, but he admitted that he knew Moore had possessed the pepper spray and had intended to use it in the event Williams resisted their robbery plan. Hence, he aided and abetted Moore in the robbery with knowledge of the pepper spray's existence and intended use; and, therefore, he may be subjected to § 2B3.1(b)(2)(E)'s 3-level enhancement. *See* 18 U.S.C. § 2 (aider and abetter is "punishable as a principal"); *see also United States v. Pinkney*, 15 F.3d 825, 828 (9th Cir. 1994) (enhancement cannot

---

[2] Melton's *pro se* brief sets forth a few auxiliary arguments that are either clearly frivolous (e.g., "any fact (other than prior convictions) that increases the maximum penalty for a crime, [sic] must be charged in the indictment, submitted to jury [sic] and proven beyond a reasonable doubt" (Appellant's Br. 9)), unsupported by law or fact, or wholly incomprehensible, and thus warrant little discussion.

apply absent a finding that the accomplice's possession of weapon was known to the defendant or that it reasonably should have been foreseen).   This point is clear.

Not so clear is whether pepper spray is a "dangerous weapon" under § 2B3.1(b)(2)(E)—a question this Circuit has yet to address.   The commentary to § 2B3.1(b)(2)(E) provides some guidance: "'Dangerous weapon' means . . . an instrument capable of inflicting death or serious bodily injury . . . ." U.S.S.G. § 1B1.1, comment (n.1(D)(i)) (referenced by § 2B3.1 (n.1)).   "[S]erious bodily injury" is defined as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty . . . ." U.S.S.G. § 1B1.1, comment (n.1(L)).

In describing pepper spray's effects, Melton's Presentencing Report says,

> Pepper spray can cause extreme pain and prolonged impairment of bodily organs.   The spray burns the face, nostrils, restricts breathing passages, and causes blindness.   Most persons recover from its effects within 20 to 30 minutes, sooner with aid.   However, persons with medical problems such as asthma have experienced damage to lungs when exposed to pepper spray.

(JA 50.)   Moreover, albeit in a different context, this Circuit has noted pepper spray's incapacitating effects, *see, e.g.*, *Bultema v. Benzie County*, 146 F. App'x 28, 35–36 (6th Cir. 2005), and other circuits have as well, *see, e.g.*, *United States v. Neill*, 166 F.3d 943, 949–50 (9th Cir. 1999). Therefore, based on the severe and probable effects that pepper spray has on the human body, the district court's determination that pepper spray constitutes a "dangerous weapon" was not erroneous.

In any event, had the district court erred in concluding pepper spray to be a "dangerous weapon," Melton would be nonetheless incapable of showing that this error was "plain" at the time of his sentencing.   This Court, after all, had never addressed the issue until now, so any error in the district court would not have been "clear" or "unequivocal." *See United States v. Olano*, 507 U.S.

4

725, 734 (1993) ("A court of appeals cannot correct an error . . . unless the error is clear under *current* law." (emphasis added)).

Accordingly, because Melton cannot satisfy the first element (that there be an "error") or the second element (that the error be "plain"), further analysis of the remaining two elements of plain error review is unnecessary. *See United States v. Payne*, 16 F.3d 1222, 1994 WL 36849, at *2 (6th Cir. Feb. 8, 1994) (table decision) (per curiam) ("Absent any error, our inquiry is at an end.").

**III**

Having seen no error in the district court's 3-level enhancement under § 2B3.1(b)(2)(E), we **AFFIRM** the district court's sentence of 55 months.