Strafford
No. 2007-072

THE STATE OF NEW HAMPSHIRE

v.

ANGEL COSME

Argued: January 17, 2008
Opinion Issued: March 20, 2008

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Angel Cosme, appeals his two convictions for misdemeanor sexual assault, RSA 632-A:4 (2007), arguing that the Superior Court (*Fauver*, J.) erred in denying his motion to strike the jury panel. We affirm.

The following facts appear in the record. In April 2006, the defendant was charged with one count of aggravated felonious sexual assault and two counts of misdemeanor sexual assault. In August, he filed a motion to record and to be present at the pretrial jury orientation because, he alleged, the trial court had a practice of verbally instructing prospective jurors on legal concepts and responding to questions of individual prospective jurors. Defense counsel averred that he had been present at prior orientations during which the presiding justice gave an instruction on reasonable doubt which deviated from the *Wentworth* model, *see State v. Wentworth*, 118 N.H. 832 (1978), and referenced the type of evidence that may be presented at trial. No action was taken on the defendant's motion until after the pool of prospective jurors had already received orientation prior to jury selection.

During jury selection, the defendant moved to strike the jury panel based upon Part I, Article 15 of the State Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, arguing that the trial court's practice of discussing legal concepts with prospective jurors during orientation deprived him of both his right to be present for a critical stage of the criminal process and the ability to raise and preserve substantive issues for appellate review. The trial court denied the motion to strike. The trial proceeded, and at the close of the evidence, the jury was

instructed on the applicable law. The jury returned guilty verdicts on the two misdemeanor sexual assault charges and acquitted the defendant of the felony charge. This appeal followed.

The defendant challenges our state's practice for jury orientation; that is, the process prior to criminal, civil or equitable proceedings when individuals reporting for jury duty are first assembled in the courthouse but not yet selected to potentially sit as a juror on any specific case. Jury orientation has been a common practice among courts in the United States for some time. *See, e.g., State v. Vance*, 250 S.E.2d 146, 151-52 (W. Va. 1978); *State v. Delgado*, 513 A.2d 701, 704 (Conn. App. Ct. 1986); *Brown v. State*, 349 A.2d 359, 362-63 (Md. Ct. Spec. App. 1975), *overruled on other grounds by Sims v. State*, 573 A.2d 1317, 1322 (Md. 1990); *Mele v. Becker*, 134 N.W.2d 846, 847 (Mich. Ct. App. 1965). When newly called jurors are first assembled to begin their term of service, the trial court provides them with information and instructions about the legal process, the system of advocacy and, at times, the meaning of certain legal concepts they will confront should they be selected to sit on a case. *See Vance*, 250 S.E.2d at 152. This practice is acknowledged as a means of educating prospective jurors about their role and responsibilities in the American legal system, as well as removing the shroud of mystery and relieving any anxiety about their involvement in the process. *See id.; Delgado*, 513 A.2d at 704. *See generally* ABA STANDARDS RELATING TO JUROR USE AND MANAGEMENT 139-53 (Part D and Standard 16) (1993). Our state's practice for jury orientation includes a video presentation and an informal oral address by the presiding judge followed by questions from the prospective jurors.

The defendant does not object to educating and orienting prospective jurors. Rather, he contends that the trial court's unrehearsed and unrecorded interaction with the pool of prospective jurors outside the presence of the defendant and his counsel, which may have included instructions of law, violated his constitutional rights. He specifically relies upon Part I, Article 15 of the State Constitution and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. We review questions of constitutional law *de novo. State v. Dupont*, 155 N.H. 644, 645 (2007). We first address state constitutional claims, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal cases for guidance only, *id.* at 232-33.

■■ "The defendant's right under the State Constitution to be present at trial derives from the specific guarantees set forth in part I, article 15 to produce all favorable proofs, confront witnesses, and be fully heard in one's defense, as well as the right to due process." *State v. Hannan*, 137 N.H. 612, 614 (1993) (quotation omitted). This right attaches to any proceeding that constitutes a critical stage of the criminal process set against the defen-

dant. *See Rushen v. Spain*, 464 U.S. 114, 117 (1983). Even when the defendant is not confronting a witness or evidence, due process as guaranteed by Part I, Article 15 of the State Constitution protects his right to be present "whenever the defendant's presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *State v. Castle*, 128 N.H. 649, 651 (1986) (quotation and brackets omitted); *see United States v. Gagnon*, 470 U.S. 522, 526 (1985). "The presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence." *Castle*, 128 N.H. at 651 (quotation, brackets, and ellipsis omitted); *Gagnon*, 470 U.S. at 526.

■ The right to be present also encompasses the right to a record of *ex parte* judicial communications with a juror made in the course of criminal proceedings. *See Castle*, 128 N.H. at 651-52 (analysis of whether *ex parte* discussion required to be recorded stemmed from defendant's right to be present during such discussion); *Hannan*, 137 N.H. at 614 (same). Preserving a record and providing it to a defendant serves two purposes: "First, it grants the defendant an opportunity to be heard and protects his right to trial by an impartial jury by enabling him to respond to issues raised during discussions conducted outside the presence of trial counsel." *Hannan*, 137 N.H. at 614. Second, the record permits appellate review of the discussion if the defendant later challenges the trial court's action, such as rejecting the defendant's request to excuse a juror. *Id.*

We have had occasion to review the right to be present, and the corollary right to a record, in the context of *ex parte* judicial contact with jurors during *voir dire* and after the commencement of trial. For example, we have held constitutional the trial court's practice, in cases other than first degree and capital murder, of holding discussions on the record with individual venire panelists that are outside of the hearing of counsel but are followed by a recitation to counsel on the record of the substance of the discussion. *Id.*; *State v. Bailey*, 127 N.H. 416, 421 (1985). We have emphasized the requirement for a record in such circumstances, stating that "we cannot think of any statement made in the course of criminal proceedings before the court that should not be subject to counsel's absolute right to a record upon request." *Bailey*, 127 N.H. at 421. Thus, we have held that the refusal to provide a record in such circumstance requires reversal unless it appears beyond a reasonable doubt that the error was harmless. *Id.*; *State v. Brodowski*, 135 N.H. 197, 202 (1991) (trial court must preserve record of *ex parte* discussions with venire panelist even if such a record is not requested). This standard applies if the trial court fails to notify counsel of an *ex parte* communication with an empaneled juror or fails to record such discussion in the first instance. *Hannan*, 137 N.H. at

614-15; *see also Castle*, 128 N.H. at 652-53 (*ex parte* communication with empaneled juror after trial concluded and before deliberations began required reversal because court failed to record the conversation and refused counsel's request for *voir dire*).

■ The "mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present *at every interaction* between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe *every such communication.*" *Gagnon*, 470 U.S. at 526 (quotation omitted; emphases added). Because neither the State nor the Federal Constitution contains "any black letter requirements to conduct colloquies with [jury] panelists [or prospective jurors] in the presence of counsel or on the record[,] [t]hese issues . . . call for judgments about the procedures that are reasonably necessary to promote the objective of ensuring fairness and impartiality among jurors." *Bailey*, 127 N.H. at 421.

■ Jury orientation is not the type of proceeding that triggers a criminal defendant's right to be present or right to a record under Part I, Article 15 of our State Constitution. Judicial commentary during orientation is not the same as communication during jury selection, while a trial is in progress, or at some point prior to the rendering of a verdict because such commentary is not made in the course of criminal proceedings against any specific defendant. *Cf. id.* at 421 (judicial statement made to jurors "in the course of criminal proceedings," such as jury *voir dire*, is subject to defendant's right to a record); *see Delgado*, 513 A.2d at 704 (distinguishing *ex parte* judicial remarks made during orientation from those made to empaneled juror). No specific case, whether civil or criminal, nor any specific defendant, is presented to the pool of prospective jurors. The jury pool is not informed of any specific facts or witnesses, nor asked to assess any specific personal prejudice they may have against a witness, a party, or specific type of factual scenario, civil claim or criminal charge.

Likewise, a defendant's presence at orientation, either personally or through legal counsel, would not provide him with any meaningful opportunity to defend against the charges pending against him because during orientation no specific case is ever discussed. *Cf. Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934) (right to be present implicated when proceeding involves confronting accuser, cross-examining witnesses, examining jurors, and heeding factual summation of counsel). A defendant has no constitutional right to be present when his presence would otherwise "be useless, or the benefit but a shadow." *Id.* at 106-07.

Jury orientation simply provides an opportunity for prospective jurors to be informed about the legal process and generally educated about legal concepts they will later face should they be chosen to sit on a case. Therefore, we conclude that orientation of prospective jurors is not a critical stage of criminal proceedings instituted against a defendant, and does not bear the hallmarks of a proceeding in which his presence is necessary to preserve his ability to defend against pending criminal charges. *See Vance*, 250 S.E.2d at 151; *Delgado*, 513 A.2d at 704-05; *Brown*, 349 A.2d at 363. Accordingly, the defendant had no right to be present. Because the right to require a record is derived from the right to be present in this case, *see Castle*, 128 N.H. at 651-52, we conclude that failure to record the orientation proceeding also caused no constitutional infringement.

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Hannan*, 137 N.H. at 614; *Castle*, 128 N.H. at 651; *Rushen*, 464 U.S. at 117; *Gagnon*, 470 U.S. at 526. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

We acknowledge, nevertheless, that a defendant's right to a fair and impartial jury may be potentially threatened, to some degree, whenever a trial judge engages in *ex parte* communications with prospective jurors. *See Vance*, 250 S.E.2d at 151-52 (though pretrial orientation meeting not a critical stage, court acknowledged possible threat to defendant's constitutional right to fair and impartial jury); *Delgado*, 513 A.2d at 705 n.4 (acknowledging that instances may arise in which a grossly erroneous statement compromises right to fair trial). "That a trial judge might commit a slip of the tongue or make an erroneous statement of law is not disputable." *Vance*, 250 S.E.2d at 152. *Ex parte* judicial commentary during orientation warrants reversal, however, only if the fairness of the proceeding or the impartiality of the jury is compromised to the extent that the defendant suffers actual prejudice. *See Mele*, 134 N.W.2d at 848-49 (while certain orientation remarks would have been better left unsaid, no prejudice to defendant's case shown); *State v. Aikins*, 932 P.2d 408, 428 (Kan. 1997) (while judicial remark on reasonable doubt during jury orientation was questionable, record did not show that defendant suffered actual prejudice); *see also State v. Mussey*, 153 N.H. 272, 280 (2006) (whether impermissible remark by prosecutor justifies reversal of verdict depends in part upon whether it likely could have affected outcome of case). We emphasize, however, that the "mere possibility of prejudice from a remark of the judge is not sufficient to overturn a verdict or judgment." *Aikins*, 932 P.2d at 428 (quotation omitted).

Obviously, because the orientation at issue in this appeal was not recorded, we cannot review the propriety of the actual statements made by the trial judge. However, the trial court in this case informed counsel of its regular practice; namely, that:

> in addition to the video . . . it is the practice of this Court, and I believe just about every court in the state, every trial court in the state or jury court in the state, that we go in after and answer questions, and we make—we sort of make you feel better, we supplement somewhat the—what's on the video and we answer questions. I did that in this case, and that's just for the record.

*See Delgado*, 513 A.2d at 703 (reviewing trial court's reconstructed remarks made during jury orientation). Notably, the defendant did not inquire about the particular substance of the court's communication with the jury pool, and there is no indication from the court's recitation that it made any statements about the law, flawed or otherwise, when supplementing the video or responding to questions.

██ ██ Moreover, based upon the record before us, the defendant has failed to meet his burden of establishing that he suffered any actual prejudice. Indeed, the possibility of the survival of any prejudice is so slight as to give it no constitutional significance. *See id.* at 704. Orientation occurred sometime between one and two weeks prior to trial, the trial was conducted over the course of two days, and the trial court instructed the jury on the law applicable to the case just prior to deliberations, without objection. In its instructions, the court explained the nature of direct and circumstantial evidence, including the standard of proof required concerning both, and also defined the concept of reasonable doubt, all without objection. Further, the trial court directed that, "You will decide the case by applying the law that I give to you to the facts as you find them to be," and also provided the jury with a written copy of the instructions to rely upon during deliberations. Jurors are presumed to follow the court's instructions, *see State v. Ayer*, 154 N.H. 500, 513 (2006), *cert. denied*, 128 S. Ct. 63 (2007), and we conclude that average jurors are able to understand that they are bound to follow the law as instructed to them at the close of the case and provided in written form. To the extent the jury could have been confused by any chance discrepancy between statements made during orientation and the jury instructions, they had a means of seeking clarification. Namely, the trial court instructed them on how to pose any questions that may have arisen during deliberations. Accordingly, we conclude that the record reveals no meaningful likelihood that the trial

court made any statement during orientation that compromised the fairness of the trial and the impartiality of the jury, causing the defendant to suffer actual prejudice.

On a prospective basis, in order to curtail the possibility of compromising the fairness of trial proceedings and jury impartiality, specific procedures governing the interaction between the trial court and prospective jurors during jury orientation should be accomplished through rulemaking. *See* SUP. CT. R. 51(A)(1)(b); *State v. Abram*, 153 N.H. 619, 627-28 (2006).

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.