Hillsborough-northern judicial district
No. 2007-554

THE STATE OF NEW HAMPSHIRE

v.

JOSEPH PANARELLO

Argued: March 27, 2008
Opinion Issued: April 22, 2008

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

GALWAY, J. The State appeals the order of the Superior Court (*Barry*, J.) granting the motion to suppress filed by the defendant, Joseph Panarello. We affirm and remand.

The record supports the following facts. In May 2006, the defendant was the supervisor of the Belknap County House of Corrections. On May 15, 2006, he called in sick to work. When he failed to report to work the next

day, his employer contacted the Hillsborough Police Department and requested that an officer perform a "welfare check" on the defendant at his Hillsborough home.

Hillsborough Police Officer Amy Collins subsequently arrived at the defendant's home. Seeing his truck outside, the officer knocked on three doors of the residence and looked into several windows. Although she saw lights on in the home, she did not see the defendant, and no one responded to her knocking. Officer Collins attempted to contact the defendant by phone, but to no avail. She returned to the police station and checked with dispatch, which had not received any further information.

Officer Collins later returned to the defendant's home. By stepping sideways through a fence opening, she accessed a fourth door, which was closed but unlocked. She entered the defendant's home, loudly announcing that she was Officer Collins of the Hillsborough Police Department. As she walked further into the home, she continued to identify herself and said that she was at the home to check on the defendant. Upon hearing movement upstairs, she again announced her presence. When she looked up, she saw the defendant descending the stairs. When he was at the bottom of the steps and had turned around to look at her, Officer Collins "hollered to him: [']Mr. Panarello, it's the Hillsborough Police. . . . [A]re you all right?[']" The defendant then allegedly pointed a gun at her. To get out of the line of fire, Officer Collins dove through the door to the outside.

A search warrant was subsequently obtained based upon Officer Collins' observations in the home. The defendant was eventually charged with one count of criminal threatening, see RSA 631:4 (2007), and one count of possession of a controlled substance, see RSA 318-B:2 (2004).

Before trial, the defendant moved to suppress "any and all physical or testimonial evidence obtained as a result of Officer Collins' entry into his home." He argued that the officer's entry violated Part I, Article 19 of the State Constitution. Although the State argued that Officer Collins' initial warrantless entry into the defendant's home was lawful under the community caretaking exception to the warrant requirement, the trial court disagreed and granted the defendant's motion to suppress. The State filed a motion to reconsider, which the trial court denied, and this appeal followed.

Our review of the trial court's order on a motion to suppress is *de novo*, except as to any controlling facts determined at the trial court level in the first instance. *State v. Gubitosi*, 152 N.H. 673, 676 (2005).

The State does not challenge the trial court's determination that Officer Collins' warrantless entry into the defendant's home was unlawful. Rather, the State argues that the trial court erred by suppressing "evidence that the defendant criminally threatened Officer Collins by pointing a gun at

her." The State concedes that it did not present this argument to the trial court, but argues that we may reverse the trial court, nonetheless, under our plain error rule. *See* SUP. CT. R. 16-A.

Generally, we do not consider issues raised on appeal that were not presented in the trial court. *See State v. Brum*, 155 N.H. 408, 417 (2007). The preservation requirement recognizes that ordinarily, trial courts should have an opportunity to rule upon issues and correct errors before they are presented to the appellate court. *Id.*

The plain error rule allows us to exercise our discretion to correct errors not raised in the trial court. *See* SUP. CT. R. 16-A. Before we may do so: "(1) there must be error; (2) the error must be plain; [and] (3) the error must affect substantial rights." *State v. Hancock*, 156 N.H. 301, 303 (2007) (quotation omitted). If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error, *only* if a fourth criterion is met: "the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.*; *see Johnson v. United States*, 520 U.S. 461, 467 (1997). We use this rule sparingly, limiting it to those circumstances in which a miscarriage of justice would otherwise result. *State v. Matey*, 153 N.H. 263, 266 (2006). We look to the federal courts' application of the federal plain error rule to inform our application of the state rule. *State v. Lopez*, 156 N.H. 416, 423 (2007).

On the first criterion, the State argues that the trial court erred by excluding evidence that the defendant criminally threatened Officer Collins as the fruit of the illegal entry. The State contends that evidence that the defendant pointed a gun at Officer Collins is evidence of a new crime that does not fall under the "fruit of the poisonous tree" doctrine.

"The 'fruit of the poisonous tree' doctrine requires the exclusion from trial of evidence derivatively obtained through a violation of Part I, Article 19 of the New Hampshire Constitution." *State v. Cobb*, 143 N.H. 638, 650 (1999) (quotation omitted). If the evidence in question has been obtained only through the exploitation of an antecedent illegality, it must be suppressed. *Id.*

The purpose of the exclusionary rule is three-fold. *State v. Beauchesne*, 151 N.H. 803, 818 (2005). It serves to: (1) deter police misconduct; (2) redress the injury to the privacy of the victim of the unlawful police conduct; and (3) safeguard compliance with State constitutional protections. *See id.*

Nevertheless, there are exceptions to this rule. *See id.* at 817. For instance, evidence will not be excluded "if the connection between the

illegal police conduct and the discovery and seizure of the evidence is so attenuated as to dissipate the taint." *Segura v. United States*, 468 U.S. 796, 805 (1984) (quotation omitted). In such cases, the question to be resolved is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *Cobb*, 143 N.H. at 650.

We have not heretofore decided under the New Hampshire Constitution "whether a new crime committed in response to an unlawful police entry into one's residence is attenuated sufficiently to break the chain of causation from the unlawful entry." *State v. Brocuglio*, 826 A.2d 145, 151 (Conn. 2003). Courts in other jurisdictions, however, have considered and adopted a new crime exception to the exclusionary rule. *See id.* at 152 (citing cases). Under this exception, where the response to an unlawful entry, search or seizure "has been a physical attack (or threat of same) upon the officer . . . , courts have . . . held that the evidence of this new crime is admissible." 3 W. LAFAVE ET AL., CRIMINAL PROCEDURE § 9.4(f), at 464-65 (3d ed. 2007). "[F]ederal and state courts alike have uniformly rejected the argument that trial courts should suppress evidence relating to the defendant's violence or threatened violence toward police officers subsequent to an unlawful search or seizure or a warrantless entry." *Brown v. City of Danville*, 606 S.E.2d 523, 530 (Va. Ct. App. 2004) (quotation and brackets omitted); *see United States v. Waupekenay*, 973 F.2d 1533, 1537 (10th Cir. 1992).

Courts advance different justifications for this exception to the exclusionary rule. *Brocuglio*, 826 A.2d at 152. "[T]he common explanation is that the attack was a 'free and independent action.' " 3 LAFAVE, *supra* § 9.4(f), at 465; *see People v. Townes*, 359 N.E.2d 402, 406 (N.Y. 1976). Other rationales are that: (1) the defendant has a diminished expectation of privacy in the presence of police officers, *see Waupekenay*, 973 F.2d at 1538; and (2) the deterrent purpose of the exclusionary rule would not be served by applying it "in cases where the accused has committed a crime against police officers in response to police misconduct." *People v. Doke*, 171 P.3d 237, 240-41 (Colo. 2007).

In our view, "the policy concerns underlying [this last] rationale present a persuasive reason for adopting the [new crime] exception to the exclusionary rule." *Brocuglio*, 826 A.2d at 152. "[T]he rationale of the exclusionary rule does not justify its extension to the extreme." 3 LAFAVE, *supra* § 9.4(f), at 465. "[T]he limited objective of the exclusionary rule is to deter unlawful police conduct[,] not to provide citizens with a shield so as to

afford an unfettered right to threaten or harm police officers in response to the illegality." *Brocuglio*, 826 A.2d at 152; *cf. Beauchesne*, 151 N.H. at 818 (noting that purpose of law that resisting even illegal arrest or detention constitutes crime is to foster effective administration of justice, discourage self-help and provide for safety of police officers). Extending the exclusionary rule to these circumstances "gives a defendant an intolerable *carte blanche* . . . . This result is too far reaching and too high a price for society to pay in order to deter police misconduct." *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir. 1982), *cert. denied*, 461 U.S. 933 (1983); *see United States v. Pryor*, 32 F.3d 1192, 1196 (7th Cir. 1994). While we recognize "the sanctity of the home, the right to live in peace therein and to be free from illegal governmental interference, these rights do not extend to turn a home into a free-fire zone against the police on whim." *State v. Miskimins*, 435 N.W.2d 217, 222 (S.D. 1989).

> We decline to hold that after an unlawful entry[, search or seizure] evidence of subsequent crimes committed against police officers must be suppressed. Such a rule would produce intolerable results. For example, a person who correctly believed that his home had been unlawfully entered by the police could respond with unlimited force and, under the exclusionary rule, could be effectively immunized from criminal responsibility for any action taken after that entry.

*State v. Burger*, 639 P.2d 706, 708 (Or. Ct. App. 1982). The New Hampshire Constitution does not compel such a result. *Accord id.* Accordingly, we now join the overwhelming weight of authority in adopting the new crime exception to the exclusionary rule. Pursuant to this exception, the trial court erred by suppressing evidence that the defendant, after Officer Collins' unlawful entry into his home, allegedly pointed a gun at her. The first criterion for the plain error rule is, therefore, met.

██ ██ We next address the second criterion: whether the trial court's error was "plain." For the purposes of the plain error rule, "an error is plain if it was or should have been obvious in the sense that the governing law was clearly settled to the contrary." *Lopez*, 156 N.H. at 424 (quotations and ellipsis omitted). When the law is not clear at the time of trial and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error. *Id.* "Plain" as used in the plain error rule "is synonymous with clear or, equivalently, obvious." *Id.* (quotations omitted). As this court had never before adopted a new crime exception to the exclusionary rule, the trial court's error could not have been "clear" or unequivocally obvious. *See United States v. Melton*, 233 Fed. Appx. 545, 547 (6th Cir. 2007); *United States v. Jennings*, 12 F.3d 836, 839 (8th Cir. 1994) (where court had not

previously addressed a particular issue, it was "unable to conclude that the error here, if any there was, should have been clear to the District Court under the current law"); *Tschaggeny v. Milbank Ins. Co.*, 163 P.3d 615, 621 (Utah 2007) (where application of collateral source rule to medical bill write-offs was a matter of first impression in Utah, trial court's decision could not "rise to the level of plain error"). *But see United States v. Whab*, 355 F.3d 155, 158 (2d Cir.) ("It may be appropriate for this Court to find an error 'plain,' even in the absence of binding precedent from the Supreme Court or this Circuit, where other circuits have uniformly taken a position on an issue that has never been squarely presented to this Court."), *cert. denied*, 541 U.S. 1004 (2004). The second criterion, therefore, is not met.

The State contends that the trial court's error was plain in light of our decision in *Beauchesne*, which it asserts is on all fours with this case. In *Beauchesne*, however, we were not presented with the precise question at issue here. The defendant in *Beauchesne* was unlawfully seized and, thereafter, resisted arrest. *Beauchesne*, 151 N.H. at 815. On appeal, he *conceded* that "the State should be allowed to prosecute him for resisting detention," but argued that the marijuana that he dropped or threw when he fell during his flight and the cocaine that the police later found on his person should be suppressed. *Id.* at 806, 815-16. While in dicta, we observed that resisting even an illegal arrest constitutes a crime, we did not opine as to whether the exclusionary rule applied to evidence of that crime. *Id.* at 818. Although our dicta in *Beauchesne could* be read as creating a new crime exception to the exclusionary rule, "we do not believe that this language made it [so] obvious" as to render the law "clearly settled." *Lopez*, 156 N.H. at 425.

Having concluded that the second criterion of our plain error test is not met, we hold that the State has failed to demonstrate that the trial court committed plain error in this case. Absent plain error, we decline to exercise our discretion to correct the trial court's error in this case.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.