Hillsborough-southern judicial district
No. 2009-797

THE STATE OF NEW HAMPSHIRE

v.

MICHAEL EULIANO

Argued: November 10, 2010
Opinion Issued: March 16, 2011

*Michael A. Delaney*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Lisa L. Wolford*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Michael Euliano, appeals his conviction on one count of second degree assault, *see* RSA 631:2 (2007) (amended 2010), one count of conduct after an accident, *see* RSA 264:25 (2004), and two counts of reckless conduct, *see* RSA 631:3 (2007). On appeal, he argues that the Superior Court (*Barry*, J.) erroneously: (1) commented on the evidence in the presence of the jury; and (2) denied his motion to dismiss the reckless conduct indictments. We affirm.

The jury could have found or the record supports the following. In the early morning hours of November 12, 2007, the defendant drove his car onto the sidewalk of Cross Street in Nashua and struck and injured Juan Pech. He also hit Miguel Bisono and Jose Baez. The defendant did not stop. Later that morning, a number of officers went to the defendant's home and told him to go to the Nashua Police Station. He complied and was arrested. The defendant was interviewed by Detective Steve Sweeney and Detective Jonathan Lehto. During the interview, he admitted to accidentally hitting someone earlier that morning but denied that he swerved onto the sidewalk to do so.

The defendant was indicted for second degree assault, conduct after an accident and reckless conduct. At trial, Officer Sean Mabry of the Nashua Police Department testified that shortly after midnight on November 12, 2007, he was dispatched to the area of Cross Street for "a report of a large disturbance with approximately 15 people." He testified that after he parked and exited his cruiser, he heard "[s]omeone in the crowd yell[] —

you know — that car just ran over my friend." Officer Mabry stated that the car drove within two feet of him and, as it did so, he observed the defendant driving and "shouted stop, police, several times," but the defendant did not stop.

Pech, Baez and Bisono also testified at trial. Pech testified that he was walking on the sidewalk when he noticed the defendant's vehicle speeding towards him and his friends and then "g[et] on the sidewalk," but that he did not remember anything after that. Baez testified that he was on the sidewalk with Pech when Pech was hit by a car driven by the defendant. He testified that he felt the mirror of the car touch him. Bisono testified that he too was on the sidewalk with Pech when he observed a car go "on top of" the sidewalk and hit Pech. He stated that the car also made contact with him. According to Pech and Bisono, the defendant did not stop at the scene of the accident. Detective Sweeney testified about his interview with the defendant and during his testimony, the State played the videotape of the defendant's interview.

The defendant asserted self-defense. He testified that he was driving up Cross Street when a van pulled up to his right and his friend jumped out and told him to stop. The defendant explained that at this point he turned around because he "noticed in [his] rearview mirror that about 30 kids were running up the street with bats and machetes." He stated that he saw someone hit his friend's shoulder with a machete and he "took off . . . down Cross Street." He stated that "the road was full of people." He explained that he "[s]werved around them as much as [he] could," but that he "[e]nded up driving on the sidewalk" and hitting Pech. The defendant admitted that after he hit Pech, he kept driving. He further stated that he did not "tr[y] to hit anybody."

The State cross-examined the defendant concerning inconsistencies between his trial testimony and the information he gave to the police in his videotaped statement. He agreed with the prosecutor's statement that his "story" was "considerably different from the one [he] gave the police on the morning of the incident." He indicated that he "crossed over the lane and onto the sidewalk and hit [Pech] on the sidewalk." Additionally, he conceded that he could have left the area by taking an alternate route but that instead he turned around and drove towards the crowd.

At the close of the evidence, the defendant moved to dismiss the two reckless conduct indictments, arguing that they are insufficient to charge felony reckless conduct because they fail to allege that the instrument used by the defendant in committing the crime constituted a deadly weapon. The court denied the motion. The jury found the defendant guilty of all charges and this appeal followed.

The defendant first argues that the trial court made improper comments during the course of his trial in violation of his rights to due process and to an impartial judge under the Fifth and Sixth Amendments to the Federal Constitution and Part I, Articles 15 and 35 of the State Constitution. The defendant concedes that he did not object to the trial court's comments. Nonetheless, he contends that we should review the trial court's conduct under the plain error rule.

■ The plain error rule allows us to exercise our discretion to correct errors not raised before the trial court. *See* SUP. CT. R. 16-A; *State v. Russell*, 159 N.H. 475, 489 (2009). For us to find plain error: "(1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights." *State v. Panarello*, 157 N.H. 204, 207 (2008) (quotation and brackets omitted). Generally, to satisfy the burden of demonstrating that an error affected substantial rights, the defendant must demonstrate that the error was prejudicial, *i.e.*, that it affected the outcome of the proceeding. *State v. Lopez*, 156 N.H. 416, 425 (2007). If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion: the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *See Panarello*, 157 N.H. at 207. The rule is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result. *See id.*

The defendant argues that, on three separate occasions, the trial court "expressed a judicial opinion on the evidence, on [his] guilt, and on his credibility." The defendant maintains that this conduct prejudiced him, thereby denying him a fair trial. The first comment occurred during the State's direct examination of Detective Dennis Lee of the Nashua Police Department concerning his involvement in the investigation:

Q. And while you were there, did you locate any type of a crime scene?

A. We did.

Q. And where was that located?

A. Just north of the intersection of Canal Street and Cross Street.

[Defense counsel]: Objection, Your Honor, foundation for this?

. . . .

[Defense counsel]: There's no foundation.

THE COURT: For what?

[Defense counsel]: For any crime scene. What crime? We haven't heard about any crime from this witness.

THE COURT: Well, you know, the people weren't out there saying the rosary from what I can get so far . . . .

The second comment occurred shortly thereafter during the State's direct examination of the same witness:

Q. And with this map of Nashua, could you just indicate where the general vicinity it was of the crime scene that you found?

A. Approximately it was in the area of —

[Defense counsel]: Objection, Your Honor. Your Honor, the State hasn't established that any crime occurred. It said in the opening — and I stipulate now — that [the victim] was hit by [the defendant]. But that's not a crime — it was an occurrence of self-defense. It was an act. So I object to the Prosecutor continuing to refer to it as a crime scene. It was an accident scene.

THE COURT: Hit and run is a crime . . . . At least it was when I got admitted to the bar in 1968. And it still is as far as I know. And there's been evidence so far of a hit and run taking place. And I'll allow it. Objection overruled.

The final comment followed the State's introduction of the videotaped interview of the defendant. After the videotape concluded, the court stated: "Well, I don't think that's going to win any Academy Awards. We're going to recess at this point and we'll resume at ten o'clock tomorrow."

■ While we do not condone the trial court's conduct, after reviewing the record in this case, we are not persuaded that the challenged comments give rise to plain error affecting the defendant's substantial rights. The comments do not express a judicial opinion on the defendant's guilt or credibility as suggested by the defendant. Indeed, the first two comments did not occur during testimony about the defendant. The first comment was made following testimony describing "a large disturbance" involving "multiple people fighting — acting disorderly" and "bordering" on a riot. As such, the jury could easily have understood the comment to be referring to the "large disturbance." It cannot reasonably be construed to imply, as the defendant alleges, that the trial court believed the defendant to be "a bad person who had committed a crime." *Cf. Young v. Clogston*, 127 N.H. 340,

344 (1985) (finding that the trial court's dialogue with a witness "could have colored the jury's decision as to the reasonableness of the plaintiff's conduct and was improper").

■ The second comment was made during Detective Lee's testimony about his investigation of a hit and run. Prior testimony by Officer Mabry also indicated that a hit and run had occurred. Thus, the trial court's statement reflected the evidence offered by the officers in their testimony regarding the investigation of a hit and run. While a single direct response to the objection would have been preferable, a trial judge is not prohibited from summarizing the evidence, so long as he does not "manifest[ ] bias in the presentation of evidence." *People v. Harris,* 118 P.3d 545, 571 (Cal. 2005) (no judicial bias against the defendant where the court commented on the evidence outside the presence of the jury, interrupted defense counsel during cross-examination of several witnesses and questioned the defendant during his testimony), *cert. denied,* 547 U.S. 1065 (2006).

The third comment followed the State's introduction of the videotaped interview of the defendant. To the extent the comment could be construed as a statement regarding the individuals on the videotape, there is no indication that the comment solely referred to the defendant. The interview involved not only the defendant but also Detective Sweeney and Detective Lehto. At most, the comment suggests that the video did not exhibit the type of material worthy of an Academy Award. It was not a specific comment on the defendant's guilt or credibility. *Cf. State v. Houston,* 139 S.W.3d 223, 229 (Mo. Ct. App. 2004) (defendant was prejudiced when the trial court essentially told defendant that his defense was " 'immaterial and irrelevant,' and consistently interject[ed] on behalf of the State, all in the presence of the jury"); *State v. Chappell,* 987 P.2d 1114, 1118 (Kan. Ct. App. 1999) (trial court's comment that child victim was capable of telling the truth and had answered questions truthfully during *voir dire* substantially prejudiced the defendant's right to a fair trial).

Moreover, in view of the entire trial record, we find that the defendant has failed to demonstrate that the trial court's comments affected the outcome of the proceeding. The defendant admitted that he drove onto the sidewalk and hit Pech with his car. Pech, Bisono and Baez confirmed that a car was driven onto the sidewalk and struck Pech. Bisono and Baez testified that the car made contact with them. Pech and Baez both identified the defendant as the driver. While the defendant testified that he swerved onto the sidewalk to avoid hitting the crowd, he conceded that he could have left the area by an alternate route but chose not to do so.

In addition, the defendant admitted to leaving the scene after the accident and other witnesses corroborated that the defendant did not stop

after he hit Pech. Further, in the videotape of his interview with the detectives, the defendant made statements that were inconsistent with his testimony at trial. Indeed, he agreed with the prosecutor's statement that his "story" at trial was "considerably different from the one [he] gave the police on the morning of the incident."

■ Finally, the trial judge instructed the jury at the close of evidence: "If you believe that I have expressed or suggested an opinion as to the facts in my rulings, you should ignore that belief. It is up to you alone to decide the facts in this case." The defendant argues that this instruction "was insufficient to cure the prejudice." We disagree. Jurors are presumed to follow the court's instructions. *See State v. Cosme*, 157 N.H. 40, 46 (2008). Accordingly, we conclude that the defendant has not carried his burden to show that the trial court's conduct amounted to plain error that affected the outcome of the proceeding. *See Lopez*, 156 N.H. at 425.

■ Nevertheless, the facts of this case warrant a note of caution. A judge must be mindful of comments from the bench, as the judge's influence on the jury is necessarily great. *See Young*, 127 N.H. at 344. We caution trial judges to refrain from making ostensibly witty or sarcastic remarks, which could in any way be interpreted as going to the weight of testimony, *see id.*, or the defendant's guilt or innocence. *See State v. Rosencrans*, 128 N.H. 399, 401 (1986).

To the extent that the defendant argues that the trial judge was not impartial under Part I, Article 35 of the New Hampshire Constitution and the Sixth Amendment to the United States Constitution, and, thus, should have been disqualified from the proceedings, *see State v. Belyea*, 160 N.H. 298, 303 (2010), he has not adequately developed this argument for appellate review. Accordingly, we decline to address it. *See id.* at 307.

The defendant next argues that the trial court erred in denying his motion to dismiss the reckless conduct indictments. He maintains that the indictments fail to allege a material element of the crime of felony reckless conduct, namely, the deadly weapon element, and, thus, they are insufficient under Part I, Article 15 of the New Hampshire Constitution and the Fifth and Sixth Amendments to the United States Constitution. We note that the defendant failed to raise a state constitutional claim in the trial court; we, therefore, confine our constitutional analysis to the requirements of the Federal Constitution. *See State v. LaMarche*, 157 N.H. 337, 340 (2008).

■ We will assume, without deciding, that requirements under the Federal Constitution pertaining to indictments apply. *But see Williams v. Haviland*, 467 F.3d 527, 532 (6th Cir. 2006) (noting that the Supreme Court

has repeatedly asserted "that the Grand Jury Clause of the Fifth Amendment does not apply to the states"). Under the Federal Constitution, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *LaMarche*, 157 N.H. at 341. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (quotation omitted).

In this case, the reckless conduct indictments under which the defendant was charged reference RSA 631:3, II and are identical, except for the victims' names. The indictments state, in relevant part, that the defendant:

> did commit the crime of Reckless Conduct, in that [the defendant], did recklessly engage in conduct which placed another in danger of serious bodily [*sic*] while operating a motor vehicle on Cross Street by driving his vehicle onto the sidewalk, striking [the victim] thereby placing [the victim] in danger of serious bodily injury.

(Bolding omitted.)

RSA 631:3 provides that a person commits the crime of reckless conduct "if he recklessly engages in conduct which places or may place another in danger of serious bodily injury." RSA 631:3, I. The crime "is a class B felony if the person uses a deadly weapon as defined in RSA 625:11, V. All other reckless conduct is a misdemeanor." RSA 631:3, II. Section II elevates the offense of reckless conduct from a misdemeanor to a felony by requiring the State to charge and prove that the defendant used a "deadly weapon as defined in RSA 625:11, V." *Id.* A "[d]eadly weapon" is "any firearm, knife or other substance or thing which, in the manner it is used, intended to be used, or threatened to be used, is known to be capable of producing death or serious bodily injury." RSA 625:11, V (2007).

In this case, the language of the reckless conduct indictments tracks the wording of section I of the statute. *See* RSA 631:3, I. Thus, the indictments alleged misdemeanor reckless conduct with sufficient definiteness to withstand a motion to dismiss. *Hamling*, 418 U.S. at 117; *State v. Champagne*, 119 N.H. 118, 119-22 (1979) (finding that the trial court did not err by not dismissing arson indictment that failed to include the aggravating factors of felony-level arson because it sufficiently alleged misdemeanor

arson). Therefore, we conclude that the trial court did not err in denying the defendant's motion to dismiss the indictments.

■ We next turn to whether the indictments sufficiently allege felony-level reckless conduct. We need not address this question, however, because even assuming that the indictments do not allege all the elements of felony-level reckless conduct, we conclude that any error was harmless. *See United States v. Mojica-Baez*, 229 F.3d 292, 311 (1st Cir. 2000) (harmless error review applies "to the failure to include an element in an indictment that otherwise provided the defendants with fair notice of the charges against them"), *cert. denied*, 532 U.S. 1065 (2001); *United States v. Dentler*, 492 F.3d 306, 310 (5th Cir. 2007) (applying harmless error review to failure to include an element in an indictment); *State v. Fichera*, 160 N.H. 660, 662-63 (2010) (applying harmless error review to an *Apprendi v. New Jersey*, 530 U.S. 466 (2000), violation concerning an omission from an indictment). Under federal law, "we consider only whether, on the basis of the evidence that would have been available to the grand jury, any rational grand jury presented with a proper indictment would have charged that the defendant committed the offense[s] in question." *Dentler*, 492 F.3d at 311 (quotation and brackets omitted); *see Fichera*, 160 N.H. at 663. "In conducting that examination, we may consider the [trial] jury's unanimous findings — which are considered to be, at a minimum, persuasive evidence of how a grand jury would find." *Dentler*, 492 F.3d at 311 (quotation and brackets omitted).

■ Here, the grand jury returned indictments for reckless conduct that reference the felony-level offense, RSA 631:3, II, and each is marked as a class B felony. The indictments allege that the defendant used his car, and no other object, to strike Baez and Bisono "thereby placing [them] in danger of serious bodily injury." (Bolding omitted.) At trial, the defendant did not dispute that he struck Baez and Bisono with his car. Furthermore, Baez and Bisono testified that they were standing with Pech when he was hit, and the defendant admitted that he hit Pech, in the prosecutor's words, "hard." Based upon these circumstances, we find that any rational grand jury presented with proper indictments would have charged the defendant with felony-level reckless conduct. Since the defendant does not argue that the indictments failed to provide him with sufficient notice of the felony-level offenses, we will not consider whether the defendant was prejudiced by any error in the language of the indictments. *See Fichera*, 160 N.H. at 663.

■ Finally, to the extent the defendant argues that the jury's verdict was incomplete as to felony-level reckless conduct because "[t]he court did

not instruct the jury that the State must prove the 'deadly weapon' element, and did not instruct on the RSA 625:11, V definition of that element," we decline to address this argument. We generally do not consider issues raised on appeal that were not presented in the trial court. *See Panarello,* 157 N.H. at 207. A review of the record does not reflect, and the defendant has not pointed to, any evidence that this argument was raised before the trial court. It is the burden of the appealing party to provide this court with a record sufficient to decide the issues raised on appeal and to demonstrate that the appellant raised those issues before the trial court. *State v. Thiel,* 160 N.H. 462, 464 (2010). As the defendant has failed to meet his burden, we will not address this argument.

*Affirmed.*

DALIANIS, C.J., and DUGGAN and CONBOY, JJ., concurred.