Grafton
No. 2009-038

THE STATE OF NEW HAMPSHIRE

v.

JORDAN BELYEA

Argued: November 17, 2009
Opinion Issued: May 20, 2010

*Michael A. Delaney*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Kathryn Hyland*, staff attorney, New Hampshire Appellate Defender Program, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Jordan Belyea, appeals a decision by the Superior Court (*Vaughan*, J.) denying his motion to recuse the judge

who was a member of the drug court team from presiding over the hearing to determine whether the defendant's participation in the Grafton County Drug Court Sentencing Program (Grafton County Program or Program) should be terminated. He also appeals the denial of his oral motions to continue the termination hearing. We affirm.

## I

The following facts are drawn from the trial court's order or are otherwise undisputed on the record before us. In June 2006, the defendant pled guilty to one felony count for forgery and two misdemeanor counts for fraudulent use of a credit card and theft by unauthorized taking. He was sentenced to ninety days in jail, which was suspended, and he was placed on probation. In November, he entered a plea of true to a probation violation and was sentenced to serve a two- to seven-year term of imprisonment, suspended for two years, and he remained on probation. In October 2007, the defendant again entered a plea of true to another probation violation. He was sentenced to serve three to seven years, all suspended for five years conditioned upon good behavior and compliance with all the terms and conditions of the Program.

Before the defendant was admitted to the Program, the trial court engaged in a colloquy with him in the presence of his legal counsel and explained the conditions for his admission and participation, including the consequences for noncompliance with the Program's requirements. The defendant's suspended sentence, which was conditioned upon his compliance with the Program's requirements, specifically provided that: "[t]ermination of participation in the [Program] shall result in the imposition of the suspended sentence without hearing. The defendant agreed, on the record, to waive any rights to any such hearing(s)." He also acknowledged that he "explicitly waive[s] any right to a hearing . . . if it is the decision of the Drug Court Program that sanctions be imposed, including termination and imposition of the suspended sentence."

Upon admission to the Program and after his plea of true was accepted for his most recent probation violation, the defendant executed a Grafton County Drug Court Participation Agreement. He also signed the Grafton County Drug Court Supervisory Regulations as a "contract for behavior and expectations while participating in Grafton County Drug Court." The document the defendant signed included the following acknowledgement: "I understand that I may not leave the State of New Hampshire at any time unless approved by Drug Court Supervisory personnel." During his participation in the Program, the defendant accumulated three Program sanctions. Sometime in mid-September 2008, he left the state without permission and returned in mid-November. The Program's drug court

team met and discussed the defendant's unlawful absence from the Program, as well as an appropriate sanction.

Subsequently, the State moved to impose the defendant's suspended sentence. It alleged that the Grafton County Department of Corrections had reported that the defendant had violated the terms of his supervision by fleeing the jurisdiction, and recommended that the defendant's participation in the Program be terminated and that his suspended sentence be imposed. In response, the trial court scheduled a fifteen-minute "Drug Court Termination Hearing" to address the State's motion. The defendant objected to the State's motion to impose his suspended sentence, arguing that Program participants have a right to procedural due process before their conditional liberty can be lost through termination from the Program and imposition of a suspended sentence. He sought an evidentiary hearing on whether he should be terminated from the Program. He also moved to recuse Judge Timothy Vaughan from presiding over any termination proceedings, contending that the judge's participation as a member of the drug court team, which had recommended his termination, created an appearance of impropriety. The trial court rescheduled the date of the hearing and changed the allotted time from fifteen minutes to one hour.

At the hearing, the trial court denied the defendant's motion for recusal. With respect to the State's motion to impose the suspended sentence, the defendant agreed that he had fled the jurisdiction and had been out of the state for almost two months. The State made offers of proof about the defendant's conduct during his absence from mid-September to mid-November 2008. The defendant cross-examined two witnesses and presented his case through offers of proof, letters from his primary care physician and his primary substance abuse counselor, as well as his own testimony. During the hearing, the defendant's several requests for a continuance were denied. At the conclusion of the hearing, Judge Vaughan ruled that the defendant's participation in the Program was "no longer warranted," and he imposed the defendant's suspended sentence, giving him credit for time served. Judge Vaughan issued a written order to further explain his denial of the defendant's motion for recusal, his decision to terminate the defendant's participation in the Program and his ruling to impose the defendant's suspended sentence. This appeal followed.

II

A brief description of the Grafton County Program is warranted before we turn to the defendant's arguments. We accept the trial court's description of how the Program operates, which the parties do not dispute. We note that the trial court's order refers to a "Drug Court Sentencing Program Policy Manual," but such document is not included in the record before us.

The Grafton County Program is a two-year court-supervised rehabilitation program that serves as an alternative to incarceration, and it follows a generally accepted model for drug court programs instituted throughout the country. *See generally* NATIONAL ASSOCIATION OF DRUG COURT PROFESSIONALS, DRUG COURT STANDARDS COMMITTEE, DEFINING DRUG COURTS: THE KEY COMPONENTS (U.S. Dept. of Justice, Office of Justice Programs, Drug Courts Program Office, January 1997). A coordinator oversees the continued participation of each drug court participant on a weekly basis. Every Wednesday morning, a staff meeting occurs approximately one hour before the court session, and the drug court team conducts a weekly review of each participant's progress. The drug court team consists of the Drug Court Coordinator, a lawyer from the New Hampshire Public Defender Program, a lawyer from the prosecutor's office, supervisory personnel, health care professionals, and the presiding justice of the Grafton County Superior Court.

At the weekly meetings, the team reviews each participant's compliance with the Program's terms and conditions. Should an issue arise with respect to a participant's behavior, the team discusses what, if any, sanctions should be imposed. The team discusses consequences that range from minor sanctions to program termination, depending upon the severity of the participant's misconduct. Team members make recommendations for sanctions to the presiding judge who is part of the team. The ultimate decision with respect to sanctions and/or termination from the Program rests with the presiding judge.

## III

The defendant first argues that the trial court erred by denying his motion for recusal because Judge Vaughan's participation on the drug court team created an appearance of impropriety in that his participation suggested that he had prejudged the defendant's termination from the Program. The defendant contends that while a member of the drug court team, Judge Vaughan gained intimate knowledge of his progress in the Program and had been an active participant of the team when it recommended his termination. According to the defendant, "To an objective observer the potential for bias is great where one [judge] monitors a [Program] participant's progress . . . , joins in the decision to terminate the participant from the program, and decides the sanction for the participant's conduct in the Program." The defendant relies upon Part I, Article 35 of the State Constitution, Canon 3E(1) of the Code of Judicial Conduct, and our state case law.

■ The New Hampshire Constitution guarantees the "right of every citizen to be tried by judges as impartial as the lot of humanity will admit."

N.H. CONST. pt. I, art. 35. The Code of Judicial Conduct reflects this guarantee, *see* SUP. CT. R. 38, Canon 3E(1); *see also State v. Ayer*, 150 N.H. 14, 35 (2003), *cert. denied*, 541 U.S. 942 (2004), and requires disqualification in a proceeding where the judge's impartiality might reasonably be questioned and to avoid even the appearance of impropriety, *see* SUP. CT. R. 38, Canon 3E(1); *see also Miller v. Blackden*, 154 N.H. 448, 456 (2006). The existence of an appearance of impropriety is determined by an objective standard, *i.e.*, "would a reasonable person, not the judge himself, question the impartiality of the court." *Miller*, 154 N.H. at 456 (quotation omitted). "The objective standard is required in the interests of ensuring justice in the individual case and maintaining public confidence in the integrity of the judicial process which depends on a belief in the impersonality of judicial decision making." *Blaisdell v. City of Rochester*, 135 N.H. 589, 593 (1992) (quotation omitted). The test for an appearance of partiality is "whether an objective, disinterested observer, fully informed of the facts, would entertain significant doubt that justice would be done in the case." *Blevens v. Town of Bow*, 146 N.H. 67, 69 (2001) (quotation omitted).

We conclude that based upon the record before us, the defendant has failed to establish that an objective, disinterested observer who is fully informed of the operation of the Grafton County Program, and of Judge Vaughan's participation as a member of the drug court team generally and in this case specifically, would entertain significant doubt about Judge Vaughan's ability to fairly and impartially judge the issues presented at the defendant's termination hearing. *See id.* Each Program participant is required to meet with the drug court team, which includes the presiding judge, on an on-going basis. The court retains the authority to terminate the participant's participation in the Program or order other sanctions, including incarceration, if a participant is re-arrested, tests positive for drugs or alcohol, or fails to meet any of the court-imposed obligations. The drug court team regularly evaluates a participant's progress based upon information brought to the team's attention, including diagnostic and treatment information and the participant's compliance with specific Program terms and conditions, such as remaining arrest free. The drug court team has the responsibility to review a participant's compliance with the Program's requirements and to discuss any sanctions that should be imposed for a participant's misconduct. Individual team members recommend particular sanctions, but the ultimate decision on sanctions, including whether a participant will be terminated from the Program, rests solely with the presiding judge.

In his order, Judge Vaughan described his involvement with the drug court team as follows:

The Court does participate in the team meetings and does listen to information about [Program] participants in those meetings. The Court, however, ultimately makes its own decision with respect to what, if any, sanctions or termination should occur with respect to each defendant. . . . [T]he Court has, after hearing recommendations by the team with respect to sanctions and/or termination for particip[ants], refused to follow those recommendations and implemented separate or alternate sanctions.

Judge Vaughan further explained:

In a probationary drug court, the judge does not provide the treatment, does not supervise or analyze the participants, and does not do anything akin to social work. The judge administers and coordinates the input of all components and holds periodic reviews to ensure that the [defendant] is complying with lawful probation orders of the Court. Although the ambience and feel of drug court may be different from a standard criminal courtroom, the function is essentially the same.

We note that while Judge Vaughan stated in his order that he "does not supervise or analyze the participants," the record shows that when entering the Program, the defendant agreed to remain "under the supervision of the [Program's] Judge [as well as] one or more . . . officers from Grafton County Department of Corrections" during the term of the two-year Program. Further, the presiding judge who explained the terms of the Program to the defendant told him: "I will look forward to meeting with you on an on-going basis supervising your participation and your full and complete compliance with treatment and supervision requirements." However, the record shows that the extent of the presiding judge's supervision of the defendant consists only of facilitating weekly review meetings, listening to information pertaining to a participant's compliance with the Program terms and conditions, considering any sanctions recommended by the team members for a participant's misconduct, and independently deciding what sanctions, if any, are appropriate. Nothing in the record shows that Judge Vaughan varied from this process when participating as the presiding judge on the drug court team.

The defendant contends that a disinterested observer would entertain significant doubt about whether Judge Vaughan prejudged the facts and was able to remain indifferent to the outcome of the termination hearing. He argues that "[a]s part of the treatment team, the court has already evaluated the evidence and likely given input about the recommendation to terminate [the defendant], thus creating the appearance of improper prejudgment to an outside observer." His argument rests upon the faulty

premise that the record demonstrates that when Judge Vaughan participated as a member of the drug court team and monitored the defendant's progress, he acted in some role other than as a neutral and detached magistrate. *See Alexander v. State*, 48 P.3d 110, 114 (Okla. Crim. App. 2002) (supervising judge's role on drug team is an adjudicator); *cf. State v. Rogers*, 170 P.3d 881, 886 (Idaho 2007) (drug court judge may preside over termination hearing and serve as sentencing judge in accordance with restricted due process protections).

██ Nothing in the record demonstrates that Judge Vaughan acted as an investigator, advocate, or prosecutor when participating with the drug court team. *Cf. Alexander*, 48 P.3d at 114-15 (defendant made no record showing the extent of the supervisory judge's participation in the defendant's treatment and involvement as a member of the team that would support an allegation of bias). Rather, the record shows that Judge Vaughan remained an impartial judicial officer. In that role, and in the presence of the entire drug court team, which included a lawyer from the New Hampshire Public Defender Program, Judge Vaughan listened to current information on the defendant's progress or problems in the Program and to sanction recommendations presented by individual members of the team, as a result of the defendant's purported misconduct. It is not uncommon for judges to acquire information about a case while sitting in their judicial capacity in one judicial setting and later to adjudicate the case without casting significant doubt on their ability to render a fair and impartial decision. *See State v. Bader*, 148 N.H. 265, 270-71 (2002) (judges are able to set aside information gained in earlier proceeding and decide case solely on the evidence presented at a subsequent hearing), *cert. denied*, 538 U.S. 1014 (2003). Furthermore, nothing in the record demonstrates that Judge Vaughan relinquished his judicial role as the ultimate decision maker to anyone. Indeed, the record establishes that in other drug court cases, Judge Vaughan rejected recommended sanctions presented by drug court team members and imposed sanctions he decided were appropriate.

Accordingly, we conclude that the defendant has failed to show a factual basis in the record before us on which a reasonable person would entertain significant concern about whether Judge Vaughan prejudged the facts or abandoned or compromised his impartiality in his judicial role on the drug court team. *Cf., e.g., Winslow v. Holderness Planning Board*, 125 N.H. 262, 267 (1984) (planning board member's remarks illustrated that he had prejudged the facts of the case before joining the board, which constituted a cause for disqualification); *Appeal of Seacoast Anti-Pollution League*, 125 N.H. 465, 471-72 (1984) (factual basis existed giving rise to appearance of

impropriety where PUC chairman made public comments that, among other things, proposed financing for Seabrook appeared to be in best interest of the state at a time when the issue of whether proposed financing was in the public good would be pending before the PUC in the future).

■ The defendant also contends that Judge Vaughan's impartiality could reasonably be questioned because he had personal knowledge of disputed evidentiary facts concerning the termination proceeding. *See* SUP. CT. R. 38, Canon 3E(1)(a). This contention lacks merit for two reasons. First, nothing in the record demonstrates that Judge Vaughan had personal knowledge of the defendant's conduct that he acquired outside the context of monitoring the defendant's progress in the Program while serving in his judicial capacity on the drug court team. *Cf., e.g., Appeal of Public Serv. Co. of N.H.*, 122 N.H. 1062, 1073 (1982) (PUC chair improperly initiated contact with a party to investigate facts relevant to the outcome). The record demonstrates that as the presiding judge on the team, Judge Vaughan learned information about the defendant's compliant and noncompliant behavior in the context of the weekly review meetings and in the presence of the entire team, and retained the authority to decide and impose any sanctions that may be appropriate for a participant's misconduct. This is not a circumstance in which an objective, disinterested observer, fully informed of the process and goals of the Program, would entertain significant concern about whether Judge Vaughan gained personal knowledge about the defendant in a manner that would affect his impartiality and his ability to justly decide a termination issue.

Second, the defendant points to no disputed evidentiary facts that Judge Vaughan relied upon in terminating him from the program. At the hearing, the defendant agreed that he had left the state for two months without permission. This was a clear violation of the Program's Supervisory Regulations, which prohibited him from "leav[ing] the State of New Hampshire at any time unless approved by Drug Court Supervisory personnel." *See Alexander*, 48 P.3d at 114 (court unpersuaded by defendant's allegation of bias in judge's decision to terminate him from drug court program, premised solely on judge's position as a member of the drug court team, in part because evidence contained more than sufficient evidence to support termination decision). The defendant also presented his own offer of proof at the hearing, which was accepted by the trial court without objection from the State, to explain his troubled mental health and difficulty with medication that led up to his unlawful absence from the state. Without objection, the defendant presented the letter recommendations of his primary care physician and his substance abuse counselor in support of a less drastic sanction than his termination from the Program. Ultimately,

the trial court decided to terminate the defendant and impose his suspended sentence based upon his admitted misconduct in fleeing the state, as well as his three prior Program sanctions. On this record, we hold that an objective, disinterested observer would not entertain significant doubt about Judge Vaughan's impartiality. There is no evidence that he had or considered facts not known by the drug treatment team or that he had personal, independent knowledge of any facts relied upon in ordering the defendant's termination from the Program. *See, e.g., Lozano v. State,* 751 P.2d 1326, 1327-28 (Wyo. 1988) (presiding judge did not have personal knowledge of disputed evidentiary facts giving rise to an appearance of impropriety, despite witnessing defendant in a bar drinking alcohol in violation of her probation, because the defendant freely admitted to the facts at the probation violation hearing); *cf. Alexander,* 48 P.3d at 114-15 (defendant made no record showing the extent of judge's participation in defendant's treatment and/or judge's involvement as member of drug court team which supported a claim of bias).

Finally, the defendant argues that recusal was required because permitting the same judge to participate on the treatment team and to preside over his termination from the Program "runs afoul of the purpose of the drug court program." He contends that the purpose of the Program is rehabilitative and thus, "a single judge sit[ting] in both capacities . . . may cause a participant to be less forthcoming to treatment providers, fearing that any adverse information the participant discloses to a treatment provider could be discussed in weekly drug court meetings and could be used against the participant in a termination hearing by the same judge." Because the defendant advances this argument without adequate development and without legal support, we decline to address its merits. *See Guy v. Town of Temple,* 157 N.H. 642, 657-58 (2008) (judicial review not warranted for sweeping legal assertion that lacked adequately developed argument or legal support).

## IV

The defendant next argues that the trial court erred in denying his three oral motions to continue his termination hearing. According to the defendant, the trial court should have granted a continuance because it had failed to provide him with adequate notice prior to the hearing that he would be allowed to present evidence. Therefore, he contends, he was unable to subpoena witnesses and prepare his defense, and the trial court's denial of his motions for a continuance violated his due process rights. The State argues, however, that the defendant did not preserve any argument regarding the adequacy of the notice he received in advance of the hearing. We agree.

After the State filed its motion to impose the suspended sentence, the trial court scheduled a fifteen-minute hearing. The defendant objected, arguing that he was entitled to the "full panoply of due process protections afforded when a conditional liberty interest is at stake." He requested an evidentiary hearing on whether he should be terminated from the Program, and subsequently, the court issued a notice rescheduling the date and allocating one hour for the hearing.

At the beginning of the hearing, the court informed the parties how it intended to conduct the proceeding:

> I'm treating this matter under the nature of a probation violation. The burden of proof in this matter would be by a preponderance of evidence. And I'm proceeding with offers of proof, in the first instance, in connection with this matter.

> If I find, by a preponderance of evidence, that Mr. Belyea is, in fact, in violation of the drug court program, which I treat as a probation component, then sanctions shall be imposed consistent with what I deem is appropriate under the circumstances.

The defendant did not object to the trial court's decision to conduct a hearing on the merits that day or otherwise argue that he was not given advance notice on whether he would be allowed to present evidence, as he now argues on appeal. When the trial court asked the defendant whether there were other "preliminary issues" he wanted to raise, the defendant did not raise any challenge to the hearing notice, but "stipulate[d] to the facts of [his] leaving the program," and stated that "it's not necessary to hear testimony or fact evidence on what transpired before he turned himself in."

Throughout the hearing, the defendant made three requests to continue it so he could secure live witness testimony. However, he did not base any of the requested continuances on any purported inadequacy of the court's hearing notice. Indeed, when the trial court denied the defendant's second request, it stated: "This hearing was scheduled for a sufficient period of time to permit witnesses to be acquired. They're not here, apparently. Therefore, your request . . . is denied." When denying the defendant's last request, the trial court observed: "This hearing has been scheduled for a long period of time, sufficient to have appropriate witnesses here, if necessary." In the face of the trial court's statement, the defendant remained silent and did not express a contrary view.

■ "It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial." *Miller*, 154 N.H. at 456. Because

the record fails to demonstrate that the defendant challenged the adequacy of the court's notice for his termination hearing, the argument is not preserved for our review.

Moreover, the defendant did not challenge the adequacy of the court's notice in his notice of appeal. Rather, he raised only a due process challenge to the trial court's decision to allow the State to proceed by offers of proof and to its denial of his request to call as a witness a particular member of the drug court team. Therefore, even if the defendant had raised the notice issue before the trial court, he waived it on appeal. *See Sara Realty v. Country Pond Fish & Game Club*, 158 N.H. 578, 582 (2009); SUP. CT. R. 16(3)(b).

Finally, the defendant challenges the legality of the waiver he executed prior to entering the Program. Specifically, he asserts that he cannot "waive his rights to a hearing to impose a suspended sentence." Because the trial court granted the defendant's request for a termination hearing and ruled, without objection by the defendant, that it would treat the proceeding like a probation violation, his waiver argument is moot.

*Affirmed.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.