*Effrem Antoine Conner v. State of Maryland,* No. 26, September Term 2020. Opinion by Harrell, J.

**JUDGES – DISQUALIFICATION TO ACT – PROBLEM-SOLVING COURTS RULE –** Maryland Rule 16-207 does not mandate that a trial judge assigned to a drug court program grant a motion to recuse him or her from presiding over a violation of probation proceeding for a current or former drug court participant. A trial judge's knowledge gained from involvement in drug court, both by presiding over status hearings and communicating as a member of the drug court team, is not acquired from an extrajudicial source and is not 'personal' knowledge necessitating recusal.

**JUDGES – DISQUALIFICATION TO ACT – PERSONAL BIAS –** A reasonable person with knowledge of all the relevant facts would not have questioned the trial judge's impartiality on this record based upon his prior involvement with the Petitioner arising from the drug court program. The record does not reflect that the trial judge was the recipient of any ex parte or confidential communications relative to the Petitioner or that he had prejudged the evidence based upon knowledge acquired in the drug court.

IN THE COURT OF APPEALS OF

MARYLAND

No. 26

September Term, 2020

---

EFFREM ANTOINE CONNER

v.

STATE OF MARYLAND

---

McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned)
        JJ.

---

Opinion by Harrell, J.

---

Filed: March 26, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

For the second time in three years, we confront a due process challenge arising from participation in the Montgomery County Adult Drug Court ("Drug Court"), a variety of problem-solving courts governed by Maryland Rule 16-207. Three years ago, in *State v. Brookman*, 460 Md. 291, 322 (2018), this Court held that a drug court must afford a participant "certain minimum due process protections" before imposing a sanction involving the loss of liberty or termination from the program. In the present case, we are asked to determine whether a former drug court participant is denied his right to an impartial tribunal if a judge assigned to the drug court (and who, in that capacity, presided over certain events involving the participant) also presides over a revocation of probation proceeding arising from the participant's alleged violations of drug court protocols, as well as the related conditions of his probation.

In September 2016, Petitioner Effrem Connor[1] pled guilty in the Circuit Court for Montgomery County in five cases involving theft charges and violations of probation. The court sentenced him cumulatively to 15 years, all suspended in favor of five years' probation and, as a condition of probation, ordered Connor to enroll in, comply with the conditions of, and complete successfully the Drug Court program.

In 2018, the State alleged that Connor violated his probation in those cases by failing to abstain from drugs and alcohol and failing to comply with the requirements of Drug

---

[1] Petitioner's name appears as "Conn<u>o</u>r" in the circuit court docket entries and throughout most of the record from the circuit court, including when he printed his name on his Drug Court enrollment agreement. On appeal, his name has been spelled uniformly as "Conn<u>e</u>r" in the appellate papers. We shall use the spelling appearing on the circuit court docket entries and by Petitioner in that court.

Court. Connor moved to recuse any "Drug Court Judge[]" from presiding over his violation of probation hearing. The Honorable John Maloney, a sometimes Drug Court team member, denied the motion to recuse, presided over the revocation hearing, and found Connor in violation of his probation. The court sentenced him to serve 10 years.

Connor filed an application for leave to appeal in the Court of Special Appeals, which was granted. A divided panel of that Court affirmed the circuit court judgment in an unreported opinion.[2] We granted Connor's petition for a writ of *certiorari* and shall affirm likewise the judgment.

## BACKGROUND

Beginning in the 1990s, Maryland courts began operating a variety of problem-solving courts, of which a drug court is one. *Brookman*, 460 Md. at 297; *see also* William McColl, Comment, *Baltimore City's Drug Treatment Court: Theory and Practice in an Emerging Field*, 55 Md. L. Rev. 467 (1996) (discussing the first drug court established in Maryland in 1994). These courts are, in essence, "treatment programs operated under the auspices of the judiciary[,]" *Brookman*, 460 Md. at 294, employing "a multi-disciplinary and integrated approach" to address matters otherwise "under a court's jurisdiction[.]" Md. Rule 16-207(a)(1).

In a drug court program, the court collaborates with other governmental entities, community organizations, and the parties to work to achieve the common goal of

---

[2] *Conner v. State*, No. 134, Sept. Term. 2019 (Md. Ct. Spec. App., filed 26 June 2020).

"[r]estor[ing] defendant as a productive, non-criminal member of society[.]" Administrative Office of the Courts, *Problem-Solving Courts, Drug Treatment Courts*, https://mdcourts.gov/opsc/dtc, last visited 11 Mar. 2021 [archived at https://perma.cc/FFN2-GS3C]. "A typical drug court program is divided into several phases of diminishing intensity as the participant progresses in accordance with the program's goals." *Brookman*, 460 Md. at 296 (footnote omitted). Regular status hearings presided over by judges assigned to the program encourage compliance with treatment and the protocols. *Id.* at 296-97. Graduated sanctions, "some of which derive from the court's coercive powers[,]" may be imposed for violations of the program rules. *Id*. at 297.

The Circuit Court for Montgomery County established its Drug Court in 2004. *Id*. at 300. Its stated mission "is to reduce recidivism by providing intensive services and supervision to address substance dependence and criminal thinking." Montgomery County Circuit Court, *Adult Drug Court*, available at https://www.montgomerycountymd.gov/cct/drug-court.html, last visited 11 Mar. 2021 [archived at https://perma.cc/5U29-Z7ZV]. To achieve that goal, the Drug Court "provides an alternative to traditional case processing and disposition that emphasizes the value of[] [c]ollaborative treatment planning, case management, and judicial decision-making[.]" *Id*. The program is intended to last a minimum of 20 months. *Id*.

As detailed in *Brookman*, in the ordinary course, a defendant enters the Drug Court as a condition of probation after a guilty plea or being charged with violating probation.[3] *Id*. at 300. If the defendant graduates from Drug Court, his or her probation is terminated. *Id*. A team collaborates to help the defendant reach that goal, comprising "the judge (referred to as the team leader), the program coordinator, the prosecutor, defense counsel, case managers, and treatment providers." *Id*. at 301. If a defendant violates the terms and conditions of the program, including by missing scheduled appointments or by a positive urinalysis test result, he or she is subject to receiving a range of sanctions up to and including incarceration and, ultimately, termination from the program. *Id*. at 301-02. Non-compliance with the program rules also may result in violation of probation proceedings.

### FACTS AND PROCEEDINGS

On 22 September 2016, after pleading guilty in five cases and receiving a suspended sentence conditioned upon his entry into, compliance with, and completion of Drug Court, Connor signed and executed a Drug Court enrollment agreement.[4] Among the fourteen numbered paragraphs of the agreement were included provisions whereby he agreed to "comply with the expectations and requirements of Drug Court"; to "attend and participate

---

[3] This represents a post-adjudication model, which differs from a pre-adjudication approach in which a participant may enter a drug court "prior to any substantive disposition of the case." *See* Tamar M. Meekins, *Risky Business: Criminal Specialty Courts and the Ethical Obligations of the Zealous Criminal Defender*, 12 Berkeley J. Crim. L. 75, 87 (2007).

[4] Consistent with Rule 16-207(e), before enrolling, participants in the Drug Court sign a written agreement that provides information about the requirements of the program, its protocols, the sanctions that may be imposed for noncompliance, and any rights waived by participation in the program. Md. Rule 16-207(e)(1).

in substance abuse treatment" as directed by the circuit court; and to abstain from drugs and alcohol. Connor acknowledged that he understood that he could be directed to submit to drug and alcohol testing at any time; that his failure to do so would result in a sanction; that "using or possessing any [drugs or alcohol] will result in a violation of the terms of [his] probation"; and that "any attempt to falsify a drug and alcohol test, including dilution," would be grounds for termination from Drug Court. He averred that he understood that failure to complete Drug Court would result in his being terminated from the program and "sentence[d] . . . in accordance with the law."

At the same time, Connor executed a "Consent for Disclosure of Confidential Alcohol and Drug Abuse Treatment and Related Medical Information" form, in which he consented to "ongoing verbal and written communication about [his] compliance status" with alcohol and substance abuse treatment to the circuit court, including judges; defense counsel; the State; and other persons involved with the Drug Court program. He consented explicitly to those communications for the purposes of "reporting on and monitoring [his] treatment, attendance, prognosis, and compliance with the terms and conditions of [his] probation" and for the purpose of "discussing, commenting, and assessing [his] status and progress as a participant in the Drug Court Program in accordance with the Drug Court's reporting and monitoring criteria[.]"

Connor began his participation in Drug Court on 13 October 2016. Over the course of 19 months, he appeared for 56 status hearings in the circuit court.[5] Judges presiding over

---

[5] Judge Maloney presided over a quarter of those hearings.

his hearings imposed graduated sanctions, including incarceration, for Connor's noncompliance with the program's terms. In the first six months, he received a written warning for failing to appear for a substance abuse treatment meeting. In April 2017, he admitted to using alcohol twice, tested positive for metabolites of alcohol and cocaine, and recorded low creatinine levels[6] on multiple occasions. In October 2017, Connor again was sanctioned for low creatinine levels, which were treated as his third positive urinalysis for purposes of the program. In January 2018, Connor tested positive for cocaine and was sanctioned.

The events giving rise to the revocation of probation proceedings under scrutiny here occurred on 23 July 2018. On that date, Maynor Corea, a lab technician at the urinalysis collection facility, observed Connor using a suspected external device to provide a false sample of urine. Mr. Corea reported this to his supervisor, Larry Stewart, the therapist who oversees the therapy arm of Drug Court. Consequently, Connor was directed to appear for a Drug Court hearing the next day before Judge Maloney, who revoked his bond pending the filing of a violation of probation petition.

Thereafter, the State charged that Connor violated standard condition 8 and special condition 16, both of which required him to abstain from drugs and alcohol, and special condition 36, requiring him to comply with the requirements of Drug Court, based upon

---

[6] As this Court explained in *Brookman*, creatinine is "a waste product in human blood" that is "eliminated from the body in urine." 460 Md. at 303 n.13. Low creatinine levels in a urinalysis test can indicate that the test subject diluted their urine by consuming excessive amounts of water. *Id*.

the alleged false urine sample, as well as all of Connor's previous violations of Drug Court rules.[7] His violation of probation hearing was scheduled ultimately for 8 November 2018 before Judge Maloney, one of four judges on the Circuit Court for Montgomery County who are intermittently part of the Drug Court team.

In advance of the hearing, Connor filed a motion to recuse any of the Drug Court judges from presiding over his violation of probation ("VOP") hearing. The State opposed the motion. Connor argued that it would create an appearance of impropriety for Judge Maloney (or one of the other Drug Court judges, regardless of whether they presided actually over any part of his participation) to preside because they were privy to extrajudicial communications concerning his progress in recovery and were familiar intimately with the other members of the team – including Mr. Stewart – whose credibility the court would be assessing in the VOP hearing. Connor attached nine exhibits to his motion, including several emails that were sent to Judge Maloney and the other members of the team pertaining to the allegation that Connor used an external device to provide a false urine sample.

The first email, dated 23 July 2018, was from Jenna Davis, the problem-solving court coordinator, to Judge Maloney, and reported that Connor had been "observed using a device to provide someone else's urine" on that date. Ms. Davis copied the rest of the

---

[7] Although this petition could not be found by us in the record transmitted to us, we gleaned this information from a transcript where Judge Maloney recited the alleged violations.

team, including Connor's attorney. Ms. Davis requested that Connor be brought to court "as soon as possible" for remand "pending further discussion by the team."

Judge Maloney replied to that email immediately and directed that Connor should appear before him the next morning at 9 a.m. Mr. Stewart replied the next morning, prior to the hearing, and set out the "[s]equence of events" surrounding the false urine incident in detail. Mr. Stewart attached to his email an email he received from Mr. Corea, the lab technician, further describing the details of that incident. Mr. Stewart stated that, considering Connor's "multiple historic positives and his current use of a device of deception," the treatment team would recommend that he be terminated from Drug Court.

Judge Maloney held a hearing on the motion to recuse and denied it. He explained that he took "motions for recusal very seriously" and was cognizant of a Committee note to Rule 16-207 that cautioned that, in a post-termination revocation of probation proceeding, the court should "be sensitive to any exposure to ex parte communication or inadmissible evidence that the judge may receive while participant was in the Drug Court Program, and I'm sensitive to that, but sees [sic] from these e-mails the best I have is allegations." He directed the State to present live testimony at the revocation hearing from Mr. Corea, rather than relying upon hearsay statements from Mr. Stewart.

Judge Maloney also addressed the content of the emails with which he was presented:

> I do not know that person [referring to Mr. Corea]. It's again, secondhand statements. I would have to read these e-mails again. To be honest, I hadn't seen them since July. I most likely did read them, or I had my secretary count for the month of October how many Drug Court e-mails there are. She had 190. That does not include individual ones I have with just

attorneys about matters, or just with the case manager, just with fellow judges, or some combination thereof, and I can't remember really many with treatment. It's just not the nature of Drug Court that I e-mail his treatment, with one exception I ask for information about graduation, if they have anything I should say about them when somebody's graduated, but, otherwise, it's just not the nature of how Drug Court works that the Court contacts treatment.

Again, as I've already said for the record, I didn't remember these e-mails. This motion is what made me remember it. The only concerning part about a treatment provider saying – the name of the witness whose name I can't remember, what's the name? . . . . [']Mr. Corea is the best.['] I don't know what that means how you're the best urine collector, but I don't think that goes to credibility.

And, likewise, again, this Court often has probation agents that the Court's worked with for 15 or 20 years. As to this one allegation of the twenty-four allegations [in the violation of probation charges], I'll be hearing from a witness I've never seen before, and I can equally judge the credibility of this witness, I believe, and Mr. Connor as to that one of twenty-four allegations.

Judge Maloney acknowledged that he was confronted by the competing duty to recuse, when required, and the duty to preside, when appropriate. In his view, it would create "complete havoc" if Connor's blanket rule argument were embraced and judges were required to recuse from presiding over sanction hearings based upon involvement in Drug Court. He noted that Drug Court functions because it creates "relationship[s]" between participants and the judges and that the relationships permit the participants to be "upfront and honest with their disease, and to embrace change, and to change their drug habits, criminal habits into productive, healthy lives." Judge Maloney recognized that recusal might be required in some cases, but did not believe it was warranted in Connor's case:

I just don't think this is that case, because I don't think the allegations and the facts disputed, again, I don't know what I'm going to hear, but it sounds like two different people, two different versions, and it might just be nothing

-9-

with other allegations that are already addressed. . . . . So, I'll deny the motion to recuse at this point.

The next day, the parties appeared for the VOP hearing. The State called Jocelyn O'Rourke, the Drug Court case manager; Mr. Stewart; and Mr. Corea to testify. Ms. O'Rourke testified generally about Connor's involvement in the program and identified case management notes that detailed his prior sanctions, as well as positive urinalysis results from one date in September 2017; five dates in April 2017; and one date in January 2018. She explained that by "accepting" a sanction for a positive urinalysis result, Connor was in effect "admitting" to the alleged violation. She testified further that all the above conduct violated the Drug Court rules.

Mr. Stewart testified that Connor failed to appear for urine collection on 18 July 2018. He appeared the next two days, but both times provided an insufficient quantity of urine to be tested. On Friday, 20 July 2018, upon learning that the quantity of urine was insufficient, an employee called Connor and asked him to return to give a second sample. Connor did not return that day. The following Monday, Connor appeared. Mr. Stewart received a call from Mr. Corea asking him to come to the collection room. Mr. Corea advised Mr. Stewart that Connor had been observed using an external device while providing a sample. Mr. Stewart directed Connor to take off his clothes to demonstrate that he did not have an external device hidden there, but Connor refused. Mr. Stewart offered to stay late to give Connor the opportunity to provide another sample, but Connor declined.

Mr. Corea testified that he accompanied Connor into the collection room on Monday, 23 July 2018. While Connor faced the toilet to give a sample, Mr. Corea observed

him through mirrors positioned on either side of the toilet. As Connor held the collection cup in his right hand, Mr. Corea observed him squeezing a clear pouch with his left hand. Consequently, Mr. Corea advised Connor that he was rejecting the sample and then contacted Mr. Stewart to report the incident.

At the close of the evidence, the court ruled that Connor violated standard probation condition 8, special condition 16, and special condition 36. With respect to the first two conditions, which required Connor to abstain from using drugs or alcohol, Judge Maloney relied upon urinalysis test results admitted into evidence through Ms. O'Rourke that reflected positive test results, as well as the Drug Court case management notes reflecting when Connor was sanctioned and that he did not "contest[] the sanctions."[8] The court noted that Connor admitted to testing positive for alcohol on 14 April 2017 and again on 16 April 2017, according to Ms. O'Rourke's case notes. In finding by a preponderance of the evidence that Connor tested positive for cocaine, Judge Maloney noted that he had presided over a Drug Court hearing on 1 March 2018 at which Connor "didn't dispute" the positive test result:

> I commend him for that, and that's what we look for. That's part of the therapeutic model is admitting to mistakes, admitting to errors in order to address them. If you don't admit your mistakes, you can't address them; that's well-renowned in the Drug Court and therapeutic literature. And, so, I commend him for confronting those previous positives, though I don't see

---

[8] In the circuit court, Connor argued that it violated the prohibition against double jeopardy for him to be charged with violating his probation based upon conduct for which he had been sanctioned already within the Drug Court program. Judge Maloney rejected that argument. Connor challenged that ruling in the Court of Special Appeals, which affirmed Judge Maloney's ruling. Conner did not petition for *certiorari* on that score and it is not before this Court.

how now I could make a finding that he didn't, in fact, test positive on those events.

Turning to special condition 36, requiring Connor to enroll in, comply with, and complete successfully the Drug Court program, Judge Maloney reasoned that Connor violated this condition by the same conduct discussed already, as well as by other conduct, including his failure to attend treatment on 13 March 2017; by providing urine samples with low creatinine levels on 13 April 2017, 18 April 2017, 24 April 2017, 26 April 2017, and 27 September 2017[9]; by failing to contact his case manager with sufficient frequency between 11 August and 17 August 2017; and by failing to appear for urine collection on 18 July 2018, as detailed in the Case Management notes. The court credited also Mr. Corea's testimony that he observed Connor use an external device on 23 July 2018 to provide a false urine sample.

The court then heard argument before sentencing Connor to serve, cumulatively, 10 years, with credit for 477 days time served. Connor also was terminated from Drug Court.

The Court of Special Appeals granted Connor's application for leave to appeal and, in an unreported opinion, affirmed the judgments. *Conner v. State*, No. 134, Sept. Term 2019 (Md. Ct. Spec. App., filed 26 June 2020). The panel majority held that the record did not support Connor's contention that Judge Maloney relied on personal knowledge regarding disputed evidentiary facts to find that he had violated his probation and found

---

[9] The court found that one of the low creatinine levels noted by Ms. O'Rourke was sufficiently close to the "cutoff" that it did not support a finding that Connor had diluted intentionally his urine.

that the out-of-state cases holding that drug court judges had erred by not recusing were inapposite. *Conner* at \*7-9.

The panel dissenter reasoned that Judge Maloney "failed to consider whether [his] 'impartiality might reasonably be questioned' due to 'personal knowledge of facts that are in dispute.'" *Conner* at \*10 (Friedman, J., dissenting) (quoting Md. Rule 18-102.11). He maintained that the case should be remanded for Judge Maloney to assess whether he received ex parte communications or inadmissible information pertaining to Connor. *Conner* at \*11-12.

## QUESTION PRESENTED

We granted certiorari to ponder a single question:

Given that Drug Court is a non-adversarial, team-based treatment program in which participants are expected to openly discuss relapses and other setbacks in their recovery, should a judge who supervised a defendant in Drug Court generally recuse from the defendant's subsequent violation of probation proceeding when the conduct that allegedly violated the conditions of probation was the subject of Drug Court hearings, meetings, and correspondence?

*Conner v. State*, 471 Md. 71 (2020).

## STANDARD OF REVIEW

Although a defendant in a revocation of probation proceeding is not entitled to the "full panoply of rights" accorded a criminal defendant, he or she is entitled to due process, which includes the right to an impartial tribunal. *Bailey v. State*, 327 Md. 689, 698 (1992); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that a probationer is entitled to a hearing "under the conditions specified in *Morrissey v. Brewer*"); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (parolee entitled to a "neutral and detached hearing

-13-

body" before parole may be revoked). "[B]ecause judges occupy a distinguished and decisive position[,] . . . they are required to maintain high standards of conduct." *Jefferson-El v. State*, 330 Md. 99, 106 (1993). Consequently, by Rule, a judge must disqualify "himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including[,]" as pertinent, when a judge has "personal knowledge of facts that are in dispute in the proceeding." Md. Rule 18-102.11(a)(1). "Generally speaking, a judge is required to recuse himself or herself from a proceeding when a reasonable person with knowledge and understanding of all the relevant facts would question the judge's impartiality." *Matter of Russell*, 464 Md. 390, 402 (2019) (citation omitted).

On the other hand, "there is a strong presumption . . . that judges are impartial participants in the legal process, whose duty to preside when qualified is as strong as their duty to refrain from presiding when not qualified." *Jefferson-El*, 330 Md. at 107 (citations omitted); *Boyd v. State*, 321 Md. 69, 80 (1990) (judges are presumed to be impartial); *accord Attorney Grievance Comm'n v. Shaw*, 363 Md. 1, 11 (2001); *In re Elrich S.*, 416 Md. 15, 33 (2010). Consequently, "the decision to recuse oneself ordinarily is discretionary and will not be overturned except for abuse." *Shaw*, 363 Md. at 11 (citing *Jefferson-El*, 330 Md. at 107).

**DISCUSSION**

### A. The Problem-Solving Courts Rule

The predecessor to Rule 16-207 was adopted in the wake of this Court's decision in *Brown v. State*, 409 Md. 1, 4 (2009), in which a drug court participant challenged the jurisdiction of the Circuit Court for Baltimore City drug court to sanction participants and

raised concerns about double jeopardy implications if participants were sanctioned for the same conduct within a drug court program and, after termination, within a revocation of probation proceeding. In rejecting the jurisdictional challenge, this Court held that a drug court is "essentially a division of the circuit court" and derives its power to incarcerate a defendant as a sanction for non-compliance from its general powers under the criminal law. *Brookman*, 460 Md. at 315 (citing *Brown*, 409 Md. at 1).

The Rule[10] identifies a problem-solving court as "a specialized court docket or program that addresses matters under a court's jurisdiction through a multi-disciplinary and integrated approach incorporating collaboration by the court with other governmental entities, community organizations, and parties." Md. Rule 16-207(a)(1). Subsection (e) governs the form and contents of the written agreement a participant must execute before enrolling in a program. That agreement must advise the defendant of the program requirements; "the protocols of the program, including protocols concerning the authority of the judge to initiate, permit, and consider ex parte communications pursuant to Rule 18-102.9 of the Maryland Code of Judicial Conduct"; "the range of sanctions that may be imposed while the participant is in the program, if any"; and "any rights waived by the participant, including rights under Rule 4-215 or Code, Courts Article, § 3-8A-20."[11] Md. Rule 16-207(e)(1).

---

[10] Although amendments were made to Rule 16-207 in 2019, the language of the provisions relevant to our discussion of the issues was not altered.

[11] These provisions govern waiver of counsel in the circuit court and in the juvenile court. Connor was represented by counsel in the present case at all relevant times.

To address the concerns raised in *Brown*, subsection (f) of the Rule provides that before "loss of liberty" may be imposed as a sanction and before a participant may be terminated from the program, he or she must be afforded notice, the opportunity to be heard, and the right to be represented by counsel. Md. Rule 16-207(f). The application of those provisions was at issue in *Brookman*, where we held in conjoined cases that the Drug Court had failed to afford participants adequate due process before imposing a sanction of incarceration for one night.[12]

A Committee note appended to subsection (f), to which Judge Maloney referred in ruling on the motion to recuse, provides:

> In considering whether a judge should be disqualified pursuant to Rule 18-102.11 of the Maryland Code of Judicial Conduct from post-termination proceedings involving a participant who has been terminated from a problem-solving court program, the judge should be sensitive to any exposure to ex parte communications[13] or inadmissible information the judge may have received while the participant was in the program.

Connor had not been terminated yet from Drug Court when his violation of VOP hearing took place. He was terminated simultaneous with being found in violation of probation.

---

[12] In one case, we held that the circuit court failed to consider the participant's attorney's request to postpone the hearing to permit her time to challenge evidence that the participant diluted her urine sample. In the other case, we concluded that the circuit court misperceived that it lacked discretion to consider mitigating evidence and to impose a lesser sanction than that provided in the Drug Court sanction "menu." *Brookman*, 460 Md. at 317-19.

[13] Pursuant to Rule 2.9 of the Code of Judicial Conduct, a judge serving on a problem-solving court is authorized to "initiate, permit, and consider ex parte communications in conformance with the established protocols for the operation of the program if the parties have expressly consented to those protocols." Md. Rule 18-102.9(a)(6).

Judge Maloney nevertheless presumed that the Committee note applied and considered it when ruling upon the motion to recuse.

### *B. Contentions on Appeal*

Against this backdrop, Connor asks principally that we side-step the ordinary case-by-case approach to evaluation of recusal rulings and instead adopt a blanket rule (as a matter of policy) requiring, at a minimum, that, upon request of the defendant, any judge who has participated as a member of a defendant's drug court team recuse from proceedings to adjudicate or sentence that defendant for violations of probation arising from conduct occurring within the confines of his or her drug court participation. According to Connor, this bright line approach is justified because a judge participating in his or her capacity as a team member in the Drug Court acts outside the traditional neutral and detached role of a judge, instead working collaboratively with "team" members in a non-adversarial setting. Petitioner maintains that permitting judges to participate in the team-based Drug Court program up until the point in time when a defendant's conduct results in a violation of probation proceeding, and then to resume their traditional role to adjudicate that proceeding and, if the defendant is found guilty, to sentence them, carries two primary risks. First, it undermines an appearance of impartiality as a matter of law because the judge necessarily would "have access to sensitive communications about [the] defendant." Second, "as a policy matter, it risks having a chilling effect on the open and honest communication with the bench that Drug Court participants need to achieve and maintain sobriety."

The State responds that this Court should "reject the broad rule" proposed by Connor. It maintains that the traditional case-by-case approach to decisions on recusal protects adequately Drug Court participants and that there is no evidence in the record in this case to suggest that Judge Maloney erred or abused his discretion in denying the motion to recuse.

For the reasons to follow, we reject Connor's proposed approach, finding it to be inconsistent with our precedent governing recusal and with the history of the Rule. We hold that, on this record, Judge Maloney did not abuse his discretion by denying the motion to recuse. Accordingly, we affirm the judgment of the circuit court.

Nonetheless, as it implicates a matter of policy, we are sensitive to the dual roles played by judges in the overlapping spheres of drug court and violations of probation proceedings. There may be some circumstances that give rise to an appearance of impropriety, although the present case is not one. As a policy matter, we recognize Petitioner's quasi-legislative argument that the willingness of a drug court participant to admit to relapses or other sanctionable conduct may be swayed, which, in turn, may impact negatively the efficacy of the program is best considered within the rule-making process. Accordingly, we refer this concern to the Rules Committee for consideration and recommendation, as a matter of general policy, whether amendment of Rule 16-207 and/or Rule 18-102.11 may be warranted.

### C. Rule 16-207 Does not Mandate Recusal

Turning to consideration of the record of the present case, we look first to the plain language of Rule 16-207 to determine if recusal was required. *See Fuster v. State*, 437 Md.

653, 664 (2014) (Maryland Rules are subject to the "same canons of construction" as those applied in the context of statutory interpretation); *Green v. State*, 456 Md. 97, 138 (2017). Nothing in the text of the Rule requires a drug court judge to disqualify himself or herself from presiding over a current or former drug court participant's violation of probation hearing.

The actions of the Rules Committee in promulgating the predecessor to Rule 16-207 (then designated Rule 16-206) sheds further light on its meaning. As proposed originally, Rule 16-206 included a judicial disqualification provision:

> (e) Disqualification of Judge
>
> A judge who terminates a participant from a program **shall** grant a motion filed by the participant for the judge's disqualification from further proceedings in the action.

*Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure*, 41-42 (8 Jan. 2010) (hereinafter *2010 Minutes*) (emphasis in original). The sub-committee drafters of the Rule posed the following policy question to the full Rules Committee relative to then subsection (e): "If a participant who has been terminated from a program files a motion to disqualify the judge who ordered the termination, must the motion be granted? Or, does disqualification depend upon the circumstances of the particular case?" *2010 Minutes* at 41 (underlined emphasis in original; bolded emphasis omitted).

During the discussion of the proposed Rule, most of which did not pertain to the proposed disqualification provision, a committee member asked if judges were members of the drug court team because he understood that drug court participants were encouraged

to be honest about their progress and setbacks in recovery, including by admitting drug use. *2010 Minutes* at 62. The sub-committee member presenting the proposed Rule to the Committee responded in the affirmative and commented that "there [was] an issue as to whether that same judge who has been exposed to ex parte communication should remain in the case for a later violation." *Id*. The Chair asked the sub-committee members and consultants working with them to discuss the policy issues and try to reach consensus while the Committee moved on to other issues. *Id.* at 70.

When the Committee returned to the proposed Rule, a freshly-revised version was handed-out that made numerous changes, including, as pertinent, removing the "Disqualification of Judge" section entirely. *2010 Minutes* at 105-07. It was replaced with a "Committee note" that, aside from minor stylistic differences, is identical to that appearing after subsection (f) of the current Rule. *2010 Minutes* at 107.

The Rules Committee approved the proposed Rule as amended. *2010 Minutes* at 114. The Rule was adopted by the Court on 9 March 2010, simultaneous with the adoption of the new Maryland Code of Judicial Conduct. *See* Court of Appeals of Maryland, Rules Order at 2, 74-77 (9 Mar. 2010), available at https://mdcourts.gov/sites/default/files/rules/order/ro163.pdf [https://perma.cc/Y6CX-8239].

The history of the Rule reflects that, in a slightly different context from that presented here, the Rules Committee considered and rejected an approach that removed judicial discretion over recusal requests, in favor of the traditional case-by-case approach, modified only to account for when a judge may have been exposed to ex parte or

inadmissible information. The scenario considered by the Rules Committee was whether a judge who terminated a participant from a problem-solving program should recuse from further involvement in the case. That scenario presented the greater possibility that the judge would have prejudged the evidence bearing upon the defendant's violation of his probation, having found already that the defendant's conduct warranted termination from the program. Given that the Rules Committee determined not to mandate recusal in that context, we decline Connor's invitation to impose a blanket policy to that effect, and certainly not on the record present here. *See General Motors Corp. v. Seay*, 388 Md. 341, 356 (2005) ("the Maryland Rules are 'precise rubrics' which are to be strictly followed").

### D. Recusal was not Required on the Record in this Case

In moving to recuse Judge Maloney, Connor alleged that his "impartiality might reasonably be questioned" because he had "personal knowledge of facts . . . in dispute." Md. Rule 18-102.11(a)(1). In assessing the propriety of the denial of that motion, we view the facts and circumstances objectively, assuming "that a reasonable person knows and understands all the relevant facts." *Boyd*, 321 Md. at 86 (citation omitted); *see also Shaw*, 363 Md. at 11 ("The party requesting recusal has a heavy burden to overcome the presumption of impartiality and must prove that the judge has a personal bias or prejudice against him or her or has personal knowledge of disputed evidentiary facts concerning the proceedings."). In the present case, we conclude that Connor failed to meet his burden to establish a factual basis upon which a reasonable person with knowledge of the facts concerning Judge Maloney's involvement and role in the Drug Court, generally, and overseeing Connor's participation in that program, specifically, would entertain doubt that

Judge Maloney could preside fairly and impartially over the revocation of probation proceeding.

"[A] trial judge is not required to recuse when [the party moving to disqualify] alleges bias arising from a source within the 'four corners of the courtroom.'" *Doering v. Fader*, 316 Md. 351, 355 (1989) (quoting *Tynan v. United States*, 376 F.2d 761, 765 (D.C. Cir. 1967)). Rather, "the alleged prejudice must result from an extrajudicial source and parties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." *Boyd*, 321 Md. at 77 (quoting *United States v. Monaco*, 852 F.2d 1143, 1147 (9th Cir. 1988)).

*Boyd* is especially illustrative. There, this Court held that a trial judge did not err by denying a motion to recuse him from presiding over the defendant's bench trial, after he presided over the bench trial of her co-defendant. 321 Md. at 71-72. We examined former Rule 1231(1)(a), which is substantively similar to the current Rule 18-102.11(a)(1), both of which are derived from Canon 3C of the Maryland Code of Judicial Conduct. In assessing whether the trial judge's involvement in the prior bench trial amounted to "personal knowledge of disputed evidentiary facts concerning the proceeding," we relied upon cases holding that a trial judge was not obligated to recuse premised upon alleged bias or prejudice arising from his participation in a prior trial or sentencing in the same case. *Id.* at 75 (citing *Doering*, 316 Md. at 351). We reasoned that the same result obtained when a trial judge acquired information by his having presided over the trials of co-defendants because, in each case, the information was learned "during prior judicial

proceedings" and was "not, therefore, *personal* knowledge or bias requiring disqualification." 321 Md. at 76 (emphasis in original).

Some of Judge Maloney's knowledge of Connor's history in the Drug Court was acquired during prior judicial proceedings – status hearings at which he presided – and some through informal team meetings and email correspondence. As this Court held in *Brown*, however, a drug court, though unique in its non-adversarial and collaborative problem-solving approach, is a division of the circuit court nevertheless. Further, we emphasized in *Brookman* that a judge presiding in Drug Court, though designated a "team member," "does not relinquish the discretion conferred on judges by statute and rule[.]" 460 Md. at 318. The information learned by Judge Maloney in the exercise of his duties as a drug court judge was information obtained while serving in a judicial capacity and was not "personal knowledge" of the kind requiring disqualification.[14]

### E. The Out-of-State Authority Supports our Conclusion

The out-of-state cases that Connor relies upon do not persuade us otherwise. In *State v. Cleary*, 882 N.W.2d 899, 901 (Minn. Ct. App. 2016), the Minnesota intermediate

---

[14] This contrasts dramatically with two cases decided by the Court of Special Appeals upon which Connor relies in which judges presiding over revocation of probation proceedings conducted independent investigations regarding the veracity of allegations against the defendants. *See Smith v. State*, 64 Md. App. 625, 628-29 (1985) (judge directed law clerk to call defendant's physician to determine if she was lying about the reason she missed a meeting with her agent); *Wiseman v. State*, 72 Md. App. 605, 609 (1987) (judge participated in conference call with probation agent and defendant's former employer and relied on information provided by employer in finding that the defendant was lying about the reason she was fired). In each case, the intermediate appellate court held that the judge's actions were improper and deprived the defendant of the right to a hearing before a fair and impartial tribunal. There was nothing in the record of this case remotely comparable to the conduct described in *Smith* and *Wiseman*.

appellate court held that it created an appearance of impropriety for the same judge who determined to terminate a participant from drug court to preside over also the former participant's revocation of probation hearing. The court explained that the drug court judge had been privy to confidential information, including a journal that the defendant exchanged with the judge on a weekly basis in which he "was encouraged to share his feelings and to openly discuss his struggles and achievements in his personal life with the judge." *Id.* at 905. Only the drug court judge "read the contents of [the defendant]'s journal." *Id.* The court reasoned that this exchange of personal information between the judge and the defendant differed from information obtained by a judge in the context of prior judicial proceedings involving the same defendant. *Id.* It also was significant that the only basis for revocation of probation was the termination from drug court and the drug court judge had made that termination decision. *Id.* at 906. Given these circumstances and the lack of a "formal record of much of what occurs in drug court," the Minnesota appellate court reversed the revocation decision. *Id.* at 907-09.

Likewise, in *State v. Marcotte*, 943 N.W.2d 911, 912 (Wis. Ct. App. 2020), the Wisconsin intermediate appellate court held that recusal was mandated where a judge who sentenced a defendant for violating his probation had presided previously over the defendant's hearings in drug court, from which he ultimately had been terminated. The court emphasized statements made by the judge, while the defendant was in drug court, indicating that he had pre-judged the appropriate sentence should the defendant fail to complete the program and other remarks evidencing that the judge had "become personally invested" in the defendant's case and was "personally frustrated" about Marcotte's failure.

-24-

*Id*. at 916, 918-19. Further, the structure of the drug court in which drug court judges attended "closed staffings" where they "receive[] significant amounts of ex parte information about drug court participants that no other judge would have access to" and have "sole and exclusive control of the drug court files, which are confidential, not open to the public, and separate from circuit court files," weighed in favor of recusal. *Id*. at 919. The court declined to hold "that a judge who has presided over drug court proceedings involving a particular defendant can never sentence that defendant after the revocation of his or her probation," but reasoned that the best practice would be for drug court judges to recuse from sentencing former drug court participants. *Id.* at 921-22.

The Supreme Court of New Hampshire reached the opposite result in *State v. Belyea*, 999 A.2d 1080 (N.H. 2010). There, the defendant moved to recuse a drug court judge from presiding over a hearing to determine if he should be terminated from the program based upon his having left the state for two months, in violation of the program rules. In affirming the denial of recusal, the court rejected as "faulty" the premise that when the judge collaborated with the drug court team he had "acted in some role other than as a neutral and detached magistrate." *Id*. at 1085. It emphasized that it was "not uncommon for judges to acquire information about a case while sitting in their judicial capacity in one judicial setting and later to adjudicate the case without casting significant doubt on their ability to render a fair and impartial decision." *Id*. The court reasoned that information learned by a judge in his capacity as drug court team member was not "personal"

knowledge requiring disqualification. *Id*. at 1086.[15] *See also State v. Rogers*, 170 P.3d 881, 886 (Idaho 2007) (drug court judge may preside over a drug court termination hearing and as a post-termination sentencing judge); *State v. Tatlow*, 290 P.2d 228, 234 (Ariz. Ct. App. 2012) (judge who presided in drug court and was alleged to have "personal knowledge" of why the defendant was terminated was not obligated to recuse from the subsequent revocation of probation hearing).

Unlike in *Cleary* and *Marcotte*, the record here does not reflect that Judge Maloney was the recipient of any confidential or ex parte communications relative to Connor's case. The email correspondence between Ms. Davis, Mr. Stewart, Mr. Corea, and Judge Maloney regarding the 23 July 2018 incident was copied to Connor's attorney, the Assistant State's Attorney, other judges on the Drug Court team, and other individuals involved with the program. As Judge Maloney emphasized in denying the motion to recuse, he did not know Mr. Corea and ordinarily would have no interaction with Connor's treatment team, including Mr. Stewart. Thus, he had no basis upon which to pre-judge their credibility prior to the revocation hearing. Further, the facts supporting the allegations laid out in the email correspondence were developed at the revocation hearing through the testimony of witnesses with personal knowledge. Notably, Judge Maloney rejected one of the State's charges, concluding that Connor's low creatinine level on 17 April 2017 was "too close" to the cut-off level to create an inference that he had diluted purposely his urine. The other

---

[15] Because the record was not developed adequately, the Supreme Court of New Hampshire declined to reach the defendant's policy argument that permitting judges to serve in these dual roles could impact negatively the drug court program by discouraging participants to be honest and forthcoming with team members. *Belyea*, 999 A.2d at 1087.

violations, however, were supported by Ms. O'Rourke's testimony, the urinalysis results, and the case management notes.

Connor focuses upon Judge Maloney's reference to an admission Connor made during a Drug Court hearing. We fail to see, however, why Connor's admission would not have been admissible against him at his revocation proceeding before another judge. He made the admission at an on-the-record status hearing, a transcript of which appears in the record. He acknowledged in his participant agreement upon enrolling in Drug Court that any use of drugs or alcohol would be a violation of his probation and he was represented by counsel at all relevant times, including when he made the admissions.

It is not unusual for judges to be exposed to inadmissible evidence or disputed evidentiary matters prior to adjudicating a case. *See Belyea*, 999 A.2d at 1085; *Wiseman*, 72 Md. App. at 609 (noting that it is not unusual "for probation officers to report informally to the judge about how a probationer is faring or to bring to the judge's attention problems"). For example, a judge presiding in a criminal case may grant a defendant's motion to suppress evidence but does not thereby become obligated to recuse from that case in view of his or her exposure to evidence deemed inadmissible. To the contrary, the presumption of impartiality carries with it the presumption that a judge will discard from his or her mind personal biases, inadmissible evidence, and other irrelevant matters in deciding a case.[16]

---

[16] This notion of the intellectual capacity to compartmentalize may be difficult for lay people to embrace. Nonetheless, it is a foundational and traditional principle of long

(Continued…)

Judge Maloney retained his role as a detached and neutral magistrate, including when he presided over Drug Court hearings and communicated with the Drug Court team. In denying the motion to recuse, he considered thoughtfully and objectively the evidence presented by Connor, with explicit sensitivity to the potential bleed-over effect of ex parte communications or inadmissible evidence (pursuant to the Rules Committee note to the Rule) and determined that his past involvement presiding over Drug Court hearings involving Connor and receiving communications about Connor's progress and difficulties in the program did not amount to personal knowledge of evidentiary facts in dispute and would not create an appearance of impropriety to a reasonable person with knowledge of the relevant facts. His decision not to recuse was not an abuse of his discretion.

### F. Legitimate Policy Concerns

As suggested earlier, we do not minimize the free-standing policy concerns raised by Connor relative to the unique role judges play in problem-solving courts and, particularly, in drug court programs. He emphasizes the candor expected of Drug Court participants, citing numerous instances where Connor was encouraged by judges presiding over his status hearings to be "honest" and "upfront" about relapses with the court and with his therapist, who, as mentioned, was permitted to share communications with the court by virtue of consent for disclosure executed by Connor as a condition of his enrollment. We recognized in *Brookman* the potential ethical issues and due process concerns that may

---

standing in the judicial process, one we have no doubt our Maryland brethren are able to, and do, follow, unless a record demonstrates to the contrary. *See, e.g., State v. Hutchinson*, 260 Md. 227, 237 (1970).

arise in the Drug Court setting. 460 Md. at 297 (noting the potential for ex parte communications between a judge and a defendant).

These same concerns animated the National Drug Court Institute's decision to "recommend[] that [a] drug court judge give the defendant the opportunity to recuse the judge, and the drug court judge should not be the judge conducting termination or probation revocation hearings, unless the participant and defense counsel specifically consent in writing to the judge hearing such matters." Marlowe, Douglas B. & Meyer, Hon. William G., ed., *The Drug Court Judicial Benchbook*, 171 (2011, Rev. 2017), available at https://www.ndci.org/wp-content/uploads/2016/05/Judicial-Benchbook-2017-Update.pdf, last visited 11 Mar. 2021 [archived at https://perma.cc/D9BH-GMHS] (hereinafter "*Judicial Benchbook*"). The authors of the *Judicial Benchbook* reasoned that "[j]udges sitting in drug court often have substantial information about drug court participants— some of which was gained through on-the-record colloquies and pleadings, as well as informal staffings with defense counsel, the prosecutor, the treatment provider, and probation." *Id*. Thus, although the source of the information may not be extrajudicial, the potential for an appearance of impropriety warranted a cautious approach, in their view. *Id*.; *see also* Timothy Casey, *When Good Intentions are Not Enough: Problem-Solving Courts and the Impending Crisis of Legitimacy*, 57 SMU L. Rev. 1459, 1514-15 (2004) (recommending that when the "'treatment phase'" of drug court "is deemed to have failed, and the alternative punishment sought to be imposed, . . . the termination or revocation process should occur in a different court with a different judge" because "the same judge should not play good cop and then play bad cop").

At least one state court reached a similar conclusion, recommending, in an advisory capacity,[17] that motions to recuse drug court team judges from presiding over decisions to terminate a participant from the drug court program should be granted ordinarily. *Alexander v. State*, 48 P.3d 110 (Okla. Crim. App. 2002). The Oklahoma intermediate appellate court "recognize[d] the potential for bias to exist in a situation where a judge, assigned as part of the Drug Court team, is then presented with an application to revoke a participant from Drug Court" and concluded that "[r]equiring [a judge] to act as Drug Court team member, evaluator, monitor and final adjudicator in a termination proceeding could compromise the impartiality of [the] judge assigned the responsibility of administering a Drug Court participant's program." *Id*.; *see also Marcotte*, 943 N.W.2d at 921-22 (reasoning that the best practice would be for drug court judges to recuse from sentencing former drug court participants).

Although these concerns are not implicated actually by the record in this case, we shall refer to the Rules Committee the issue of whether specific additional or different guidance for recusal of judges who have participated in Drug Court proceedings, whether by presiding or by receiving communications as a member of the therapeutic team, should be incorporated into Rule 18-102.11 and/or Rule 16-207.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[17] In *Alexander*, the recusal issue was not preserved because the defendant had not moved to recuse the drug court judge prior to his termination hearing. 48 P.3d at 114.